STATE OF TENNESSEE ex rel. CARL BALSINGER,
Plaintiff-in Error,

*v.*

TOWN OF MADISONVILLE, Defendant-in-Error.

435 S.W.2d 803.

(*Knoxville,* September Term, 1968.)

Opinion filed December 23, 1968.

W. E. BADGETT, Knoxville, for plaintiff in error.

LEE & PENNINGTON, Madisonville, for defendant in error; J. D. LEE, Madisonville, of counsel.

274

Mr. Justice Chattin delivered the opinion of the Court.

This is an appeal from an adverse judgment of the Circuit Court of Monroe County upholding the validity of an ordinance passed for the purpose of annexing a certain area to the City of Madisonville.

Relator, Balsinger, filed the suit under authority of T.C.A. Section 6-310 seeking to have the ordinance vacated as unreasonable and unnecessary in consideration of the health, safety and welfare of the citizens residing within the area to be annexed as well as those residing within the City. Relator demanded a jury to try the issues.

The trial judge, after hearing extensive evidence, dismissed the jury and decided the ordinance was reasonable and valid in all respects.

Relator assigns as error the following:

"1. The trial court erred in holding the annexation ordinance in question in this case was legally passed and adopted.

"2. The trial court erred in holding that the plan of services filed by defendant adequately set forth at a minimum the identification and projected timing of the municipal services proposed to be extended into the territory sought to be annexed.

"3. The trial court erred in taking this case from the jury and deciding that the ordinance was legal since the question of whether the annexation is reasonable or unreasonable is a fairly debatable question, for the reason that such action deprived relator of his rights to contest annexation as provided for under Section 6-310 Tennessee Code Annotated.

"4. The trial court erred by its action in taking the case from the jury and dismissing the cause, since it deprived relator of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, and Article 1, Sections 6 and 8 of the Constitution of Tennessee, by depriving him of due process of law and equal privileges and immunities guaranteed him under such law.

"5 The trial court erred in taking the case from the jury and in upholding the annexation ordinance, for the reason that such action violated relator's rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, and Article 1, Section 21 of the Constitution of Tennessee, in that it permitted the property of relator, and others similarly situated, to be taken for public use without just compensation, in that relator's property and that of others similarly situated would become liable for pre-existing and outstanding indebtedness of the old town as constituted prior to annexation.

"6. The trial court erred in taking the case from the jury and in upholding the annexation ordinance for the reason that by so doing the court deprived relator of his right to a trial by a jury, guaranteed him under the Fifth, Seventh and Fourteenth Amendments to the Constitution of the United States, and Article 1, Section 8 of the Constitution of Tennessee.

"7. There is no material or substantial evidence to support the judgment and decree in this cause."

With respect to the first assignment of error, the record shows the Board of Mayor and Aldermen of the Town of Madisonville met at nine P.M., on May 30, 1966, and passed the ordinance on first reading. The Board adjourned until ten P.M., the same day, at which time the ordinance was passed on second reading. The Board then adjourned until the following day and passed the ordinance on third and final reading.

The charter of Madisonville does not make provision as to the number of readings necessary for the adoption of an ordinance. The charter does provide the regular meetings of the Board of Mayor and Aldermen shall be held quarterly; that is, four each year.

Relator insists the ordinance was not passed in accord with the following provision of the charter:

"* * * Provided, however, that meetings of the Council shall not be held oftener than once a week. The regular sessions of the Board of Mayor and Aldermen shall be held on the first Tuesday in January, April, July and October."

The trial judge correctly found the ordinance had passed three separate readings at one meeting.

"An adjourned meeting of either a regular or a stated or special call meeting is but a continuation of the same meeting." McQuillin on Municipal Corporations, Third Edition, Volume 4, Section 13.69, page 516.

"Where the law is silent as to the mode of procedure, no particular formality in the enactment of an ordinance need be adopted. 'In the absence of other requirements it is only necessary that there be sufficient proof of the will of the governing body.' In such case, the enacting body may choose its own method. Or it may choose between alternative methods, as, for example, between existing methods for establishing or securing a public improvement." McQuillin on Municipal Corporations, supra, Volume 4, Section 16.10 at page 174.

■ Relator further contends the evidence shows prior Boards of the Town had consistently passed ordinances on three separate and distinct meetings and thus a practice or custom had been set which was binding in the instant case. We disagree.

"The rule here invoked is one of parliamentary procedure, and it is uniformly held that it is within the power of all deliberative bodies to abolish, modify, or waive their own rules of procedure adopted for the orderly conduct of business * * *." *Rutherford v. City of Nashville*, 168 Tenn. 499, 79 S.W.2d 581 (1935).

■■ There is a presumption in favor of the validity of an ordinance and those questioning this validity have the burden of proof. *State ex rel. Senff v. City of Columbia*, 208 Tenn. 59, 343 S.W.2d 888 (1961). There is no proof of fraud or bad faith on the part of the Board. Nor does the charter provide an ordinance must pass one

reading at three separate meetings. We overrule the assignment.

■ By the second assignment of error, relator insists the resolution adopting the plan of services is vague, evasive, wholly inadequate and does not comply with T.C.A. Section 6-309.

In the case of *State ex rel. Robbins v. City of Jackson*, 218 Tenn. 322, 403 S.W.2d 304 (1966), this Court, speaking through Mr. Justice Creson, said:

"Appellants' second Assignment of Error urges that the trial court erred in holding that the proposed plan of services for the area to be annexed was reasonable. Suffice it to say, in connection with this Assignment of Error, that if there is evidence upon which reasonable men could differ as to the reasonableness of the proposed annexation, as is the case here, this Court will not substitute its discretion or judgment for that of the legislative body of the City. See *Morton v. Johnson City* (1960) 206 Tenn. 411, 333 S.W.2d 924; *State ex rel. Senff v. City of Columbia* (1961) 208 Tenn. 59, 343 S.W.2d 888; *State ex rel. Hardison v. City of Columbia* (1962) 210 Tenn. 514, 360 S.W.2d 39. The evidence contained in this record abounds with conflicting testimony as to the reasonableness or unreasonableness of the proposed annexation. In light of this, the Court must apply the rule as stated in *Morton v. Johnson City*, supra, as follows:

" '* * * the court does not, in any sense, substitute its discretion or judgment as to the advisability or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; its consideration of "reasonable-

ness" is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one; if there is such, then the discretion of the legislative body is conclusive.' "

There is proof in the record services of fire protection, police protection, garbage disposal, erection of street signs, signals and markings would become effective as soon as the annexation ordinance became operative. The matter of extending water and sewer service would be done as soon as it was determined the areas in which the extensions were feasible. Engineering studies were being made for this purpose.

The record further shows the City had an average bond issuing rating and had no outstanding general obligation bonds which might affect the issuance and sale of bonds to finance the services outlined in the plan of services.

In view of the testimony relating to the plan of services and the foregoing opinion of this Court, we think the City has complied with T.C.A. Section 6-309 as held by the trial judge.

The third, fourth and sixth assignments will be treated together. These assignments deal with the question of whether the trial judge erred in taking the case from the jury and deciding the question of the reasonableness of the annexation ordinance.

T.C.A. Section 6-310 provides an aggrieved property owner may contest an annexation ordinance in the nature of a quo warranto proceeding.

This statute has been held constitutional. *Witt v. McCanless*, 200 Tenn. 360, 292 S.W.2d 392 (1956). In the case

of *Morton v. Johnson City,* 206 Tenn. 411, 333 S.W.2d 924 (1960). In commenting on *Witt v. McCanless,* supra, the Court said:

"In this case we held that the action attacking annexations herein was in the nature of a quo warranto and an equitable action and that as far as the Court is concerned 'the court either finds the same to be unreasonable and vacates the ordinance, or finds the same to be not unreasonable and enters an order sustaining the validity of the ordinance. * * *' "

■ The constitutional guaranty of trial by jury refers to common law actions and not to suits of an equitable nature. *Hunt v. Hunt,* 169 Tenn. 1, 80 S.W.2d 666 (1935).

In the Morton case, the Court further said:

"We might say that in our judgment of the correct legal principle to apply is what is said in the outset of this opinion, that is if it is a fairly debatable question as to whether or not the ordinance is reasonable or unreasonable the courts certainly are not going to take any hand in it one way or the other. In other words, if it becomes a fairly debatable question on this theory (reasonableness or unreasonableness) of the thing it is not a question to be submitted to a jury. Where there is evidence pro and con it becomes a question of law for the court in view of all the evidence if it is a fairly debatable question as to reasonableness or unreasonableness. This being true the court should take the matter away from the jury and conclude in favor of the ordinance."

■ In the case at bar there are two volumes of testimony both for and against annexation from which the trial judge determined the question of the reasonableness

of the ordinance was a fairly debatable one. Consequently, he was not in error in withdrawing the issues from the jury and finding the ordinance reasonable.

■ Relator's fifth assignment contends the ordinance violates the Constitutions of the United States and the State of Tennessee in that it subjects residents of the area to be annexed to pre-existing bonded indebtedness of the City and thus takes their property without consent and just compensation. He also insists this violation of constitutional rights was compounded by the denial of a jury trial.

We have heretofore seen there is no constitutional right to a jury trial in such cases.

As to the contention the ordinance conflicts with certain provisions of our State and Federal Constitutions, this Court, in the case of *Williams v. Nashville*, 89 Tenn. 487, 15 S.W. 364 (1891), said:

"It is contended that this act is void because in conflict with the fifth amendment of the constitution of the United States, which provides that 'no person shall be * * * deprived of life, liberty, or property without due process of law, nor shall private property be taken for public use without just compensation;' and also because in conflict with similar provisions of the constitution of the state of Tennessee, 'that no man shall be * * * deprived of his life, liberty, or property but by the judgment of his peers or the law of the land' (article I, sec. 8); and 'that no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor.' Article I, sec. 21.

"As a matter of course, the act would be inoperative, null, and void, if, in fact, it violated any of those provisions. But it cannot be that it does so. The extension of corporate limits so as to include additional territory is in no sense an impairment of the owner's liberty, nor is it a taking of private property for public use. If it were held to be so, then no municipal corporation could be established or enlarged, and none of these valuable instrumentalities of the State would have a lawful existence.

"Even the statutes of annexation to which complainants ascribe the sanctity of general laws, would be utterly unavailing for the same reason.

"Placing property within the corporate limits of a given town or city, where it will be subjected to the additional burden of municipal taxation and supervision, is not a taking of the property at all. The ownership is in no degree changed, and the increased burden is presumed to be equaled by the increased advantages."

The seventh and final assignment of error urges there is no material or substantial evidence in the record to support the judgment of the trial court.

Our review is de novo of all matters of fact and law appearing in the record, but there is a statutory presumption in favor of the judgment of the trial court unless the preponderance of the evidence is otherwise. Any conflict in testimony requiring a determination of the credibility of a witness or witnesses is for the trial court and binding on this Court unless from other real evidence we are compelled to conclude to the contrary.

■ There is evidence of witnesses for both relator and defendant the ordinance was reasonable and necessary for the health, safety and welfare of the residents of the City and the area to be annexed.

An expert testified he had assisted other cities and towns in the State with annexations and in his opinion the ordinance was reasonable. He was also of the opinion the City was in a position to furnish services as set forth in the plan of services.

There is also evidence of the financial status of the City and of a financial expert the City enjoyed an average rating for the sale of bonds.

From a review of all the evidence and the presumption of the correctness of the judgment of the trial court, we do not find the evidence preponderates against the judgment.

All assignments are overruled and the judgment of the trial judge is affirmed. Relator will pay the costs.

BURNETT, CHIEF JUSTICE, DYER, CRESON and HUMPHREYS, JUSTICES, concur.