Nora Jean HUDSON, Plaintiff-Appellee,

v.

Neal Sylvester CAPPS,
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 17, 1983.

Application for Permission to Appeal
Denied by Supreme Court
May 31, 1983.

Thomas F. Ventimiglia, Paris, for defendant-appellant.

Andrew B. Frazier, Jr., Camden, for plaintiff-appellee.

CRAWFORD, Judge.

In this paternity suit the defendant, Neal Sylvester Capps, has appealed the order of the trial court adjudging him to be the natural father of Victoria Michelle Capps and Neal Sylvester Capps, Jr. The case was tried by the Juvenile Court of Benton County without the intervention of a jury.

The issues presented by the defendant for review are as follows:

1. The trial judge erred in denying the Defendant's motion to dismiss pursuant to Section 36–224(2) Tennessee Code Annotated, (the two year statute of limitations for paternity actions), in that:

a) The instant lawsuit was not brought within two years of the birth of either of the minor children involved herein, and

b) The Plaintiff failed to establish any of the exceptions set out in Section 36–224(2) Tennessee Code Annotated, which would have tolled the statute of limitations; i.e. there was no proof of any written acknowledgement of paternity by the Defendant, no proof of any financial support of the children by the Defendant, and no proof that either of the children were presently public charges or liabile [sic] to become such.

2. The trial judge erred in holding that the Defendant was the father of the minor child, Neal Sylvester Capps, Jr., contrary to uncontroverted and unimpeached testimony of the Defendant's expert witnesses to the effect that the blood grouping tests administered on the parties and both minor children involved herein, established that the Defendant could not be the father of said minor child, Neal Sylvester Capps, Jr.

3. The decision of the trial judge to the effect that the Defendant is the father of the minor children involved herein, was contrary to the weight of the proof in this cause.

The petition to establish paternity was filed by Nora Jean Hudson on November 30, 1979, and alleges that she and defendant Neal Sylvester Capps lived together without benefit of marriage from a date in 1969 until August, 1973. She further alleges that defendant is the natural father of Victoria Michelle Capps, born in 1971, and Neal Sylvester Capps, Jr., born in 1973. She avers that defendant paid for the delivery and hospital bills of both children and that he provided some support for both of

them after their births. She also alleges that the financial situation is such that without aid from the defendant the children will become public charges.

The defendant, in answer to the petition, relies upon the statute of limitations, Tenn. Code Ann. § 36–224(2) (1977), and further answers admitting that he and the petitioner lived together without marriage commencing in 1969, but denies that this continued until 1973. He claims that they separated several years earlier. Defendant denies paying for any delivery and hospital bills for either of the children, and he denies providing any support for Neal Sylvester Capps, Jr., after his birth, but he does admit that he provided support for Victoria Michelle Capps after her birth.

Depositions of Dr. Clifford I. Argall and Diane McFarland were admitted into evidence, and the remainder of the testimony comes to this court in a Statement of Evidence filed pursuant to T.R.A.P. 24(c).

The plaintiff, Nora Jean Hudson, testified that she lived with the defendant at 416 Yates Street, Paris, Tennessee, between 1969 and 1973. During that period, the longest separation of the couple was two weeks. Victoria Michelle Capps was born on October 11, 1971, in Benton County, and at that time defendant was in Chicago. Approximately three days after the birth of Victoria the defendant returned from Chicago. He visited plaintiff and the baby, and he paid the doctor and hospital bills incurred except for $123 paid by plaintiff's father. The parties, together with the baby, lived in Paris, Tennessee and held themselves out as husband and wife. During this time they had a normal sexual relationship and did not use any method of birth control. Neal Sylvester Capps, Jr., was born on July 6, 1973, and he was so named by the defendant. Plaintiff had no sexual relationship with any other man from nine to ten months prior to the date of this birth, and during this time she and the defendant were intentionally trying to have another child. The parties continued to live together for approximately six weeks after the birth of this child. Defendant had nev-

er denied that the children were his prior to the filing of the petition by plaintiff, and during the six-week period following the birth of Neal, Jr., the defendant furnished support to the plaintiff and the children. In 1979, the defendant gave the plaintiff $180 for which he designated $60 for Christmas presents for the children. Plaintiff is gainfully employed and earns approximately $150 per week. She owns a house trailer and had never received any welfare benefits. She has nothing in writing in which defendant has acknowledged that the children were his. From 1973, when the parties separated, to 1979, defendant would come over once or twice a month to visit plaintiff and the children, and on some occasions would spend the night. The last visit by the defendant was Christmas, 1979.

Shirley Boyd testified that she is the sister of plaintiff and she had never heard the defendant deny being the father of the children. She testified that the parties lived together for a short while after the birth of the second child, Neal, Jr.

Mrs. Hudson, the mother of the plaintiff, testified that while she visited with the parties in Paris, she heard the children call the defendant "daddy." She saw the defendant at the plaintiff's home one Christmas (of an unspecified year) and observed his car parked in the yard. She also said that the defendant was at the hospital the day after Neal, Jr., was born, and that the defendant, after each child was born, took the plaintiff and the child back to Paris, Tennessee. She said that the parties lived together for a short time after the male child was born and that at one time, at the plaintiff's request, she took plaintiff to Paris to get money from defendant.

Patricia Hudson testified that she is the sister of the plaintiff and that the defendant visited the children at Christmas (of an unspecified year or years) at the plaintiff's trailer in Camden. She has "heard the defendant talk about the children in a fatherly manner," and never heard him deny that he was the children's father.

The defendant, Neal Sylvester Capps, Sr., testified that he is presently married, has two children from that marriage and works in Henry County, Tennessee. He began having a sexual relationship with the plaintiff in late 1968 or early 1969, but that he saw her only on weekends and that they never lived together. He does not recall that plaintiff advised him she was pregnant with Victoria and that she thought he was the father. He never acknowledged himself to be the father of Victoria. On one occasion prior to the birth of Victoria, plaintiff asked for money for a doctor's bill, and defendant gave her $100 at that time, but he never went to the doctor's office with her during her pregnancy with Victoria. Defendant was not informed when plaintiff went to the hospital for the birth of Victoria, and he learned of the birth approximately two weeks after it had occurred. Defendant was not in Chicago at the time of Victoria's birth, and he later visited with plaintiff at the plaintiff's mother's home. He did not pay any part of the hospital or doctor's bills for the delivery of Victoria. Defendant had no sexual relationship with the plaintiff after Victoria's birth, and defendant never paid any support for either of the children. Defendant admits that he did go to the plaintiff's home around Christmas, 1979, but at that time he had been served with papers in this suit and plaintiff had also called him to talk about the suit. The defendant denies that he acknowledged the children as his own and denies that he was visited by plaintiff, her mother and sister while he was in Paris, Tennessee.

Mrs. Capps, the wife of defendant, testified that she started dating the defendant in July, 1973, and that he was not going with anyone else at that time; since their marriage he had never been away from home at night.

After being qualified as an expert in the field of hemogenetics, the director of the Hemogenetic Laboratory of Baptist Hospital of Memphis, Dr. Clifford I. Argall, testified regarding the procedures generally employed and the procedures actually applied in this case in conducting the ABO blood grouping tests. He stated that the test was 99.9% accurate, and that based on this case,

he was of the opinion that the defendant could not be the father of Neal Sylvester Capps, Jr., but that he could be the father of Victoria Michelle Capps.

The testimony of Diane McFarland, who is a medical technician whose specialty is blood banking, concerned the procedures used in the blood test, and also expressed the opinion that the defendant was conclusively shown by the test not to be the father of Neal Sylvester Capps, Jr., and that the test was inconclusive as to his paternity of Victoria Michelle Capps.

The first issue presented for review concerns the statute of limitations, Tenn.Code Ann. § 36–224(2) (1977), which is as follows:

> Proceedings to establish the paternity of the child and to compel the father to furnish support and education for the child may be instituted during the pregnancy of the mother or after the birth of the child, but shall not be brought after the lapse of more than two (2) years from the birth of the child, unless paternity has been acknowledged by the father in writing or by the furnishing of support. Provided, however, that the department of human services or any person shall be empowered to bring a suit in behalf of any child under the age of eighteen (18) who is, or is liable to become a public charge.

Defendant contends that there was no proof of any of the exceptions set out in the statute, and that therefore plaintiff's petition, filed more than two years after the birth of the children, was barred. We agree with defendant that there was no proof that "paternity has been acknowledged by the father in writing," and that there was no proof that the children were liable to become public charges. We disagree with the defendant that there was no proof of the father furnishing support. Plaintiff testified that they lived together after the birth of both children, and that the defendant furnished support for them. While the proof does not detail any actual amounts of expenditures, there is a logical inference from the testimony that the de-

fendant, while living with plaintiff and the children, furnished all of the support for the parties. In *Reynolds v. Richardson,* 62 Tenn.App. 269, 462 S.W.2d 233 (1970), Judge Shriver, speaking for this court, said:

> The statute simply states that proceedings to establish the paternity of a child shall not be brought after the lapse of more than two years from the birth of a child "unless paternity has been acknowledged by the father in writing *or by the furnishing of support.*" This statute does not specify the amount of support or the frequency with which support payments must be made in order to toll the running of the statute ...

*Id.,* at 278, 462 S.W.2d at 236–237 (emphasis in original).

We recognize that the defendant denied that he furnished support, but it is significant that he admitted in his answer that he had provided support for Victoria Michelle, but then contradicted himself at the trial when he denied in his testimony that he provided support for either of the children. In short, the decision by the trial court on this issue boiled down to the credibility of the witnesses which was decided against the defendant. The decision of the trial court on the credibility of witnesses is entitled to great weight in this court. Any conflict in testimony requiring a determination of the credibility of a witness or witnesses is for the trial court and binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary. *See State ex rel. Balsinger v. Town of Madisonville,* 222 Tenn. 272, 282, 435 S.W.2d 803, 807 (1968). We find no other evidence compelling a contrary conclusion and the statute of limitations defense was correctly overruled by the trial court.

The second issue raised by the defendant is whether the trial court was in error in holding that the defendant was the father of Neal Sylvester Capps, Jr., in the face of the testimony of the expert witnesses that the blood grouping tests were conclusive that defendant could not be the father of said child.

The blood tests were authorized and ordered by the court pursuant to Tenn.Code Ann. § 36–228 (1977), and Tenn.Code Ann. § 24–7–112 (1980). Tenn.Code Ann. § 24–7–7–112 (1980), provides:

> *Blood grouping tests to disprove paternity—Costs.*—(a) In any civil or criminal action or proceeding in any court in which the question of the paternity of a child is involved, the court before whom the matter is pending, upon motion of the person charged with being the father of the child, shall order that the alleged father, the mother and the child submit to such blood grouping tests as may be necessary including other antigenic factors as Rh, M, N, or P to determine whether or not the defendant can be excluded as being the father of the child. Such tests shall be made by qualified persons in laboratories located in this state, designated by the judge of the court in which such proceeding is pending.
>
> (b) The results of such tests shall be admissible in evidence only in cases where exclusion is established.
>
> (c) The court, in its discretion, may require the person requesting the blood grouping tests to pay the cost thereof.

■ The blood grouping tests as to Victoria Michelle Capps failed to show defendant's nonpaternity, but the results were admitted into evidence without objection by defendant. The test as to Neal Sylvester Capps, Jr., did show nonpaternity and according to Dr. Argall, the test is more than 99.99% accurate. The test is thus almost totally or absolutely accurate. Admittedly, the factors comprising blood grouping tests and the results thereof are highly technical and scientific in nature, beyond the realms of the average layman's knowledge. The legislature, however, stopped short in making the result of nonpaternity from these tests positively conclusive. In the case *sub judice* the plaintiff testified that she and the defendant had sexual relations prior to the birth of Neal Sylvester Capps and that she had relations with no other during the normal gestation period. On the other hand, defendant denied that he had relations with this plaintiff during the same period of time. While the determination of credibility of witnesses by the trial court is given great weight in this court, *see State ex rel. Balsinger v. Town of Madisonville, supra* at 282, 435 S.W.2d at 807, the case at bar has the blood test evidence which we feel compels a contrary conclusion. Dr. Argall testified that based on the blood grouping tests which are over 99.9% accurate, that in his opinion the defendant could not be the father of Sylvester Neal Capps, Jr. The laboratory technician, Diane McFarland, testified concerning the procedures used in the tests that developed the accuracy thereof. The expertise or credibility of these witnesses was not attacked in any manner. The unimpeached, uncontradicted testimony of an expert witness with respect to scientific information of which layman are not expected to have reliable knowledge and information should not be ignored by the trier of fact. *See Reserve Life Insurance Co. v. Whittemore,* 59 Tenn.App. 495, 516, 442 S.W.2d 266, 275 (1969); *Fuller v. Speight,* 571 S.W.2d 840, 841, 842 (Tenn.Ct. App.1978).

■ This case was tried by the court without a jury, and, therefore, the review of this court is *de novo* with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the judgment of the trial court must be sustained unless the evidence preponderates against it. T.R.A.P. 13(d). The evidence on the issue of the defendant's paternity of Neal Sylvester Capps, Jr., preponderates against the judgment of the trial court, and establishes that defendant is not the father of said child.

■ The last argument presented by defendant is that the judgment of the trial court was contrary to the weight of the proof in this cause, which in effect asserts that the evidence preponderates against the finding and judgment of the trial court. We need now only consider the case of Victoria Michelle Capps. The testimony of the plaintiff and defendant is contradictory, and there is some slight corroboration on

the part of the plaintiff by relative witnesses. Since there was no scientific test which could be relied upon by the court as in the case of Neal Sylvester Capps, Jr., the issue as to paternity was reduced to the question of credibility of the witnesses. As heretofore set out, we should follow the decision unless other evidence compels us to the contrary. *See State ex rel. Balsinger v. Town of Madisonville, supra,* 222 Tenn. at 282, 435 S.W.2d at 807. We find no such other evidence. Under the proof in the case and relying on the court's decision as to the credibility of witnesses, we cannot say that the evidence preponderates against the finding and judgment of the trial court as to the paternity of Victoria Michelle Capps.

Accordingly, we affirm the judgment of the trial court that Neal Sylvester Capps is the natural and lawful father of Victoria Michelle Capps. We reverse the judgment of the trial court on the paternity of Neal Sylvester Capps, Jr., and hold that Neal Sylvester Capps is not the natural and lawful father of Neal Sylvester Capps, Jr. The case is remanded to the trial court for such further proceedings as necessary.

The costs of the appeal are adjudged equally against the parties.

NEARN, P.J. (W.S.), and HIGHERS, J., concur.