**Alma Marie LIGHTFOOT, Executrix for the Estate of Theodore H. Lightfoot, and Robert Baltz, Jr., Plaintiffs–Appellants,**

v.

**L. Hall HARDAWAY, Jr., Air Corporate Associates, Ltd., Hardaway Realty Co., Inc., McGavock Associates, Ltd., and Music City Associates, Ltd., Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 27, 1988.

Permission to Appeal Denied by
Supreme Court May 2, 1988.

John M.L. Brown, Nashville, for plaintiffs-appellants.

John J. Hollins, Nashville, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

The plaintiffs, Alma Marie Lightfoot, executrix, and Robert Baltz, Jr., have appealed from a judgment dismissing their suit against the captioned defendants and ordering a 15 acre tract to be sold for partition.

On October 18, 1974, Theodore H. Lightfoot, L. Hall Hardaway, Jr., Robert J. Brewington and Robert J. Baltz entered into a joint venture agreement for the speculative purchase of 190 acres of unimproved real estate to be known as "Elm Hill Properties". According to the agreement, legal title to the land was to be held in the name of a trustee with full powers to act upon the written instruction of a majority of the investors. The property was encumbered by a mortgage indebtedness of

$2,600,000.00 for which the partners were jointly and severally liable.

In June, 1980, Robert J. Brewington withdrew from the joint venture, leaving Lightfoot, Baltz and Hardaway as the remaining investors.

On August 14, 1980, 19.5 acres of the land was sold for $458,150.00, or $23,500.00 per acre, leaving 170.5 acres in the joint venture.

On January 16, 1981, Theodore Lightfoot died, and his widow, Alma Marie Lightfoot, qualified as executrix. His estate proved to be insolvent because of heavy investment liabilities.

Efforts of the surviving participants to sell the remaining property were unsuccessful.

The Lightfoot estate was unable to pay its part of the interest payments on the bank loan; Mr. Baltz borrowed money from Mr. Hardaway to pay his part of the interest; and Mr. Hardaway paid the rest (i.e. the share of Lightfoot and Hardaway).

In the Spring of 1982, the mortgage was past due, and it became urgent that some action be taken to avoid foreclosure and resultant loss to the investors. In May, 1982, the mortgage holder threatened foreclosure. Neither Mr. Baltz nor the Lightfoot estate was able to pay a proportionate part of the debt.

On June 4, 1982, Mr. Hardaway submitted to Mr. Baltz and the Lightfoot estate a written proposal whereby Hardaway would buy 122 acres of the tract for $3,000,000.00. The offer was conditioned upon availability of financing. Mr. Hardaway was unable to obtain financing for the proposed sale which was not consummated.

Prior to February 22, 1983, Mr. Hardaway organized a limited partnership named Air Corporate Associates for the purpose of buying the subject land.

On February 22, 1983, upon the instructions of Mr. Hardaway and Mr. Baltz (a majority of the investors) the Trustee did convey the 122 acres to Air Corporate Associates for $3,000.000.00. Air Corporate Associates obtained a loan of $7,000,000.00 on the property and the personal signature of Mr. Hardaway. The original mortgage indebtedness of the investors was paid out of the $7,000,000 and remainder of the $7,000,000 was reserved for development of the property.

On November 7, 1983, Air Corporate Associates entered into a contract with the Sheraton Corporation to manage a hotel to be built on the property by Air Corporate Associates. In March, 1985, the hotel was completed and began operation under Sheraton management. On September 25, 1985, Air Corporate Associates conveyed to McGavock Associates the 23.956 acres on which the hotel was built.

The original complaint was filed by Alma Marie Lightfoot, executrix of the estate of Theodore H. Lightfoot against L. Hall Hardaway, Jr., Imperial Associates, Inc., and William D. Castleman, Trustee, and it alleged the partnership as above stated and averred:

On or about February 22, 1983 without the knowledge or consent of the remaining partners, L. Hall Hardaway, Jr., instructed William D. Castleman, Trustee to transfer and convey substantially all the partnership property to Air Corporate Associates, Ltd., a Tennessee limited partnership controlled by L. Hall Hardaway, Jr., as general partner. A copy of the Warranty Deed by which that transfer was made is attached hereto as Exhibit C. The conveyance to Air Corporate Associates, Ltd. was in violation of T.C.A. § 61–1–109(d) and T.C.A. § 61–1–120.

The complaint also alleged other business partnership transactions of the deceased and Mr. Hardaway and prayed for an accounting and dissolution of the partnerships.

William D. Castleman, Trustee, was dismissed by voluntary dismissal. Robert Baltz, Jr., was permitted to intervene as a plaintiff, McGavock Associates, Ltd., was added as a party defendant, and the original complaint was amended to add details.

By counter-claim, Mr. Hardaway sought judicial partition of the residue of land owned by the joint venture.

Music City Associates was added as a defendant.

By pretrial order, the contentions of the parties and issues were set out as follows:

Plaintiffs' theory: Hardaway and plaintiffs were partners in the joint venture called Elm Hill Properties. Hardaway breached his fiduciary duty of loyalty to plaintiffs by purchasing partnership property for himself individually, for inadequate consideration, without disclosing to plaintiffs facts which were material to the transaction, and which, if known, would have enabled plaintiffs to form a reasonably correct opinion and conclusion as to their best interest. Because Hardaway consciously failed to reveal fully all circumstances that might have affected the transaction, he (along with his various business entities) must be declared a constructive trustee—holding the wrongfully acquired property upon a constructive trust for the joint venture. In the alternative, plaintiffs seek to recover a money judgment (including interest) measured by the benefit to defendants resulting from the wrongful acquisition of the property. Plaintiffs insist that they are entitled to an accounting, and to interest on any amount of money which they may be entitled to receive as a result thereof. Because of Hardaway's conscious disregard for the rights of his partners, an award of punitive damages is appropriate in this case.

Defendants' theory: The defendants contend that Mr. Hardaway's purchase of the property was made in good faith for a fair consideration and was based on a full and complete disclosure of all material information. Mr. Hardaway did not breach any fiduciary duty or any other duty to plaintiffs and his purchase of the property was proper and lawful. The defendants further contend that a proper accounting has been made.

For affirmative defense to the complaint and amended complaint filed against them in said cause, the defendants further contend that the plaintiffs breached the joint venture agreement by failing to manage and operate the affairs of the joint venture, by failing to attempt to sell the joint venture property when foreclosure was imminent, and by failing to pay their share of the expenses of the joint venture.

For further affirmative defense to the complaint and amended complaint filed against them in said cause, the defendants contend that the plaintiffs have been guilty of laches in the filing of the complaint and the amended complaint and in failing to prosecute their alleged claims.

For further affirmative defense to the complaint and amended complaint filed against them in said cause, the defendants allege that the plaintiffs' claims are barred by the doctrines of waiver and estoppel because (1) Lightfoot had a secret agreement with Walter Reed Capps not disclosed to Hardaway to buy fifty-three (53) acres of the partnership property for syndication, and Capps and Lightfoot had negotiated with the Sheraton Corporation for the placement of a Sheraton hotel on said property, and (2) Neither Baltz nor the Lightfoot estate at any time complained to Hardaway concerning the purchase price of said property and permitted Hardaway to spend large sums of money and to incur large financial obligations in the development of said property prior to Lightfoot's complaint filed February 21, 1984, and Baltz' complaint filed January 16, 1986. Defendants waited until it appeared that Hardaway's development of the property might be successful before filing suit.

Defendants further contend that they are not liable to plaintiffs for damages or interest in any amount and contend that a constructive trust should not be imposed upon them.

Defendants contend that because of this lawsuit and for other reasons, the remaining partnership should be sold for partition.

Issues:

a. Did defendants breach any legal duties to plaintiffs.

b. Did plaintiffs breach any legal duties to defendants.

c. Are plaintiffs' claims barred by laches.

d. Are plaintiffs' claims barred by the doctrines of waiver and estoppel.

e. What was the market value of the property in question on February 22, 1983.

f. Did Mr. Hardaway pay fair consideration for the property in question.

g. If defendants breached any duty to plaintiff, did plaintiffs sustain any damages.

h. If plaintiffs sustained any damages, the amount of compensatory damages and the amount of punitive damages.

i. Are plaintiffs entitled to a constructive trust against the defendants.

j. Should the remaining property be sold for partition.

The Trial Judge filed a memorandum opinion containing detailed findings of fact. Conclusions of law of the Trial Judge were as follows:

Plaintiff failed to carry the burden of showing Hardaway purchased partnership property for inadequate consideration without disclosure of material facts.

Plaintiff failed to carry the burden of establishing Hardaway breached his fiduciary duty as a partner or failed to properly account to the partnership.

It is unnecessary to reach the issue of affirmative defenses of waiver, estoppel and laches.

The remaining fifteen acres of partnership property should be sold for partition and will be referred to the Clerk and Master for that purpose.

Plaintiffs' complaint was dismissed, and the remainder of the joint venture land was ordered sold for partition.

Alma Marie Lightfoot and Robert Baltz, Jr., have appealed. Although not stated in the notice of appeal or appeal bond, it is assumed that Ms. Lightfoot intended to appeal in the same capacity in which she sued, i.e., as executrix.

Appellants present six issues, the first of which is as follows:

Whether the trial court erred in finding as a matter of fact that the purpose of the Elm Hill Properties joint venture was restricted to holding land for investment.

The joint venture agreement states:

*Purpose of Venture.* The purpose of the Venture shall be to acquire, hold for investment, manage, own, operate, maintain, lease, exchange, develop, sell, transfer, or otherwise dispose of the Elm Hill Properties' assets, and to engage in such operations and businesses as may be determined necessary or appropriate to such purpose.

The finding of fact of the Trial Judge should be amended to conform to the above.

Appellants' second issue is:

Whether the trial court erred in finding that Hardaway did not breach his fiduciary duty to Baltz and the Lightfoot Estate, and in holding that the latter bore the burden of proving such breach.

Appellants insist that "when a fiduciary acquires trust or partnership property" the burden is upon the fiduciary to exonerate himself of improper conduct.

■ The conclusion of the Trial Judge, quoted above, was that plaintiffs failed to prove a breach of Hardaway's *"fiduciary duty as partner"*. Appellants' issue refers to Hardaway's *"fiduciary duty"*, implying that he was acting as a fiduciary (trustee) rather than as a partner. The record does not support such an implication. Whatever duties rested upon Hardaway were those of a partner, which duties were shared by all other partners of the joint venture. It was this duty of a partner to fellow partner which existed but breach of which was not shown by plaintiffs.

T.C.A. § 61-1-120 provides:

**Fiduciary duty of partners.**—(a) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the

partnership or from any use by him of its property.

(b) This section applies also to the representatives of a deceased partner engaged in the liquidation of the affairs of the partnership as the personal representatives of the last surviving partner. [Acts 1917, ch. 140, § 21; Shan., § 3141b21 (p. 6589); Shan.Supp., § 3118a72; Code 1932, § 7860; T.C.A. (orig.ed.), § 61–120.]

The substance of decisions on this subject is summarized in 4 ALR 4th pp. 1128, 1129 as follows:

The fundamental rule that the relationship of partners is fiduciary and imposes on them the obligation of the utmost good faith and integrity in their dealings with one another with respect to partnership affairs is universally recognized in the modern cases and is reinforced by the Uniform Partnership Act.... Also well established is the applicability of this fiduciary duty on the sale of one partner's interest to another partner, the courts often characterizing the duty as being "particularly" or "especially" applicable to this situation. Although it is no longer disputed, at least in theory, that such a sale will be sustained only when it is made in good faith, for a fair consideration, and on a full and complete disclosure of all important information as to value, the rule's application is by no means as clear and simple as its statement; and the specific content of such terms as "good", "fair", "full", and "important" can be known only by relating the particular conduct and circumstances of the parties to the results reached in the cases.

At the extreme ends of the spectrum of conduct by the allegedly culpable partner, the results of the cases are quite predictable. Thus, the courts have ordinarily (although not invariably) held that there was an actionable breach of fiduciary duty where the partner committed an intentional act of fraud, duress, or undue influence and thereby gained an unfair advantage over his copartner, or the copartner's representative, on the sale. But even such blatant misconduct has not always resulted in a rescission of the sale or a recovery of damages—especially where the alleged wrongdoer was not in a position of dominance, management, or control and the court decided that no legally justifiable reliance, causation, or legally cognizable damage was shown. At the other extreme, the courts have denied relief to the allegedly injured partner (or representative) where it appeared that the material facts were fully disclosed without misrepresentation or unfair advantage in connection with the sale.

■ One basis of the complaint is that Mr. Hardaway bought the property from the partnership for less than it was worth. The preponderance of the evidence shows that Mr. Hardaway paid the partnership at least the actual value of the land.

At the time of Mr. Hardaway's original proposal to buy the land, the executrix insisted upon an appraisal which was made at $2,860,000.00. At the trial expert appraisers testified to value of $3,000,000.00 and $4,293,800.00.

The weight to be accorded to expert testimony is for the trier of facts. *Gibson v. Ferguson*, Tenn.1976, 562 S.W.2d 188. Nothing is found in this record to justify a reversal of the finding of the Trial Judge that $3,000,000.00 was the fair market value of the property at the time of the sale.

The other basis of the complaint is that Mr. Hardaway failed to disclose to the other partners that he had an opportunity to construct a hotel on the land to be managed by an experienced and successful hotel operator. However, this opportunity required the clearance of two very substantial hurdles.

The first hurdle was the necessity to satisfy the existing mortgage on the property and acquire funds to "develop" the property. This entailed the borrowing of $7,000,000.00 on the personal credit of Mr. Hardaway.

The second hurdle was the borrowing of additional funds to finance the construction and furnishing of the hotel.

■ Apparently, plaintiffs conceive that it was the duty of Mr. Hardaway to offer to them the opportunity of participating in this massive investment by allowing them to sign the notes with him and share equally in the profits and losses to be ultimately realized. Remembering that the estate of Mr. Lightfoot was insolvent, and was unable to pay its part of the interest on the existing mortgage and that Mr. Baltz was in financial trouble borrowing from Mr. Hardaway to pay his part of the interest, it is difficult to conceive any duty of Mr. Hardaway to create any further joint indebtedness for which he would be the only responsible debtor.

It would have been better practice to present the other partners with a formal opportunity to finance their part of the hotel deal with funds procured by their own resources and credit. However, it is obvious from the circumstances that such an offer would have been futile. There is no evidence that either plaintiff was in position to take part in such an undertaking.

The death of a partner dissolves the partnership. T.C.A. § 61–1–130.

The surviving partner or partners have the right to "wind up the partnership affairs" (liquidate the partnership). T.C.A. § 61–1–136.

■ Ordinarily, an executor or administrator of a deceased partner has no power to engage in the continuation of the partnership business. 33 C.J.S. Executor and Administrator § 197, p. 1179. The failure to make such an offer was therefore not prejudicial to the plaintiffs or actionable by them.

■ The fairness of a transaction between a partner and the partnership is to be viewed in the light of circumstances at the time of the transaction. The fact that subsequent events resulted in a profit to the partner is not relevant except to the extent that the other partners, knowing the present circumstances including prospects, *could* and *would* have entered into the undertaking. No such willingness and ability are shown in the present case. This is especially true of the executrix who is not shown to have the authority to involve the estate in such an undertaking.

Appellants appear to contend that Mr. Hardaway concealed from them that he was the purchaser of the property. (Actually, he was the owner of a 99% interest in Air Corporate Associates, which purchased the property.) The evidence shows that Mr. Hardaway disclosed that he was the purchaser.

The Trial Judge found, and the evidence shows that Mr. Baltz knew of the negotiations with Sheraton Hotel Corporation at the time he agreed to the sale and instructed the trustee to convey.

The finding of the Trial Judge that Hardaway committed no actionable breach of partnership duty is supported by the preponderance of the evidence.

Appellants' remaining issues are as follows:

Issue No. 3: Whether the trial court erred in refusing to order a constructive trust upon the property formerly belonging to the partnership, and in refusing to order a reconveyance.

Issue No. 4: Whether the trial court erred in failing to order an accounting, which is the appropriate remedy when a partner wrongfully makes a profit from partnership property.

Issue No. 5: Whether the trial court erred in refusing to award Plaintiffs a money judgment, which is sometimes an appropriate remedy in cases in which a fiduciary has breached his duty of loyalty.

Issue No. 6: Whether the trial court erred in refusing to award punitive damages in this cause.

All of the arguments supporting these issues are based upon an assumption of the breach of a fiduciary partnership duty. The Trial Court has found that there was no such breach of duty, and this Court has concurred. The remaining issues are thereby rendered moot.

In summary, the executrix has received or will receive that to which she was entitled, the proceeds of a fair liquidation of

the partnership. She is not entitled to a continuance of the partnership for the production of future profits. The other partner, Mr. Baltz, has been accorded his rights as a surviving member of a dissolved partnership, i.e. participation in the liquidation and the proceeds thereof. He joined in the transaction of the sale of part of the assets, received his share of the proceeds of the sale, and will receive the benefit of his share of the proceeds of the sale of the remainder. He is entitled to no more.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellants jointly and severally. The cause is remanded to the Trial Court for further proceedings.

Affirmed and remanded.

CANTRELL, J., and LLOYD TATUM, Special Judge, concur.