**Lee ROOKER, Plaintiff–Appellant,**

**v.**

**Robert W. RIMER, Defendant–Appellee.**

Court of Appeals of Tennessee,
Western Section
at Jackson.

May 4, 1989.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 7, 1989.

Edward Witt Chandler, Memphis, for plaintiff-appellant.

Randall J. Fishman, Memphis, for defendant-appellee.

Charles W. Burson, Atty. Gen. and Reporter Stuart F. Patton, Asst. Atty. Gen.

HIGHERS, Judge.

The plaintiff, Lee Rooker, has appealed a summary judgment in favor of the defendant, Robert W. Rimer, in a paternity action in the Circuit Court of Shelby County.

Rooker alleges that she and Rimer engaged in sexual intercourse on July 2, 1971, and that she engaged in no other sexual intercourse in June, July and August of 1971. In January of 1972, Rooker married another man and on April 7, 1972, gave birth to a son giving him the name of her husband and the designation "Jr."

Rooker divorced her husband in July of 1979, and in December of 1985, she filed a petition against Rimer to establish paternity in the Juvenile Court of Memphis and Shelby County. Under a court order, Rooker, Rimer, and the son submitted to blood tests which excluded Rimer as the father. Another more specific test was given which also excluded Rimer, and the case was then transferred at Rooker's request, pursuant to T.C.A. § 36–2–106(a) (Supp.1988), to the Circuit Court for trial. The Circuit Court disposed of the case by granting Rimer summary judgment. Rooker has appealed.

T.C.A. § 24–7–112 (Supp.1988) provides in pertinent part as follows:

**24–7–112. Tests to determine parentage—Admissibility in evidence—Costs.** —(a) In the trial of any civil or criminal proceeding in which the question of parentage arises, the court before whom the matter may be brought, upon the motion of either party at the initial appearance, shall order that all necessary parties submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage. Failure to make a timely motion for submission to such tests and comparisons shall constitute a waiver and shall not be grounds for a continuance. The results of such tests and comparisons, including the statistical likelihood of the alleged parent's parentage, if available, may be admitted into evidence as provided in subsection (b) of this section.

(b) Upon receiving the results of the tests and comparisons conducted pursuant to subsection (a) of this section, the court shall proceed as follows:

(1) If the results of the tests and comparisons exclude the defendant as the father of the child, this evidence shall be conclusive evidence of non-paternity and the court shall dismiss the proceeding.

As stated above, Rooker requested two sets of blood tests, both of which excluded Rimer as the father. Although the Juvenile Court transferred the case to the Circuit Court, under the statute, the Juvenile Court was actually without authority to do so. The statute *requires* dismissal of the proceeding, and the Juvenile Court was without authority to do anything else.

Apart from any valid appeals which might be made, the blood tests completely dispose of Rooker's case against Rimer. However, the Circuit Court expressly did not rely on blood tests as required by statute, addressing instead more substantive issues. Part of the Circuit Court's motivation in doing so was the avoidance of constitutional challenges to the statute raised by Rooker. The trial court was attempting to adhere to the principle from *State v. Murray*, 480 S.W.2d 355, 357 (Tenn.1972), that a court shall not pass on the constitutionality of a statute unless it is absolutely necessary for the determination of the case and the present rights of the parties to the litigation.

Determination of the constitutionality of T.C.A. § 24–7–112(b)(1) was necessary for determination of this case. If constitutional, the statute prevents the Circuit Court from granting a summary judgment. The court has no subject matter jurisdiction. The statute required the Juvenile Court to dismiss the case, and did not allow the transfer for jury trial.

The challenge asserted against T.C.A. § 24–7–112(b)(1) is that it "divests" Rooker of her statutory and common law rights to a trial by a jury. Article I, Section 6 of the Tennessee Constitution provides that "the right to a trial by jury shall remain inviolate." This issue has been briefed and argued by both sides and by the Attorney General.

The statutory basis asserted by Rooker for a constitutionally protected right is T.C.A. § 36–2–106(a). That statute requires the Juvenile Court to transfer the case to Circuit Court for jury trial when the defendant so requests, or allows the trial court to transfer for jury trial on its own initiative. The order of transfer by the Juvenile Court stated that "on petitioner's request, the Court upon its authority in this cause, transfers to the Circuit Court of Shelby County for a jury trial on the issue of paternity." Rooker's right to a trial by

jury does not arise as a mandate of the statute, but it arises, if at all, by virtue of the court's discretionary order under the statute. However, the order was issued after the blood tests excluded Rimer, and as stated above, the test results abrogated the Juvenile Court's discretion to order a jury trial. T.C.A. § 24–7–112(b)(1) does not therefore divest Rooker of a right to a trial by jury. Such a right never vested. T.C.A. § 24–7–112(b)(1) does make void the order, pre-empting and abrogating any rights therein which would otherwise have arisen.

Rooker asserts that even if she had no right to a trial by jury under T.C.A. § 36–2–106(a), she has a constitutionally protected right to one as a matter of common law. Juries were not available under Tennessee common law in paternity cases. *Goddard v. State*, 10 Tenn. (2 Yerg.) 96 (1825); *Kirkpatrick v. State*, 19 Tenn. (1 Meigs) 124 (1838). "[T]he cases in which courts act without a trial by jury or 'peers' are innumerable and undefined, being *'by the law of the land.'* (emphasis in original)" *Goddard*, 10 Tenn. (2 Yerg.) at 100. If a paternity case is litigated under the law of the land, and those laws provide no trial by jury, there can be no complaint. *Id.* In *Goddard*, it was pointed out that at one time, the affidavit of the mother was conclusive evidence of paternity by the man charged. *Id.* at 99. There was *no* trial, much less one by jury. The Tennessee General Assembly passed a statute in 1822 which allowed the defendant to file a countervailing affidavit, and thereafter to put on proof, but, there was no jury, the mother was not required to testify and the defendant was not allowed to cross-examine the mother if she did not choose to testify. The policy behind the law was to allow the mother to leave behind a single transgression or, if her transgressions were several, to encourage her to return to a virtuous lifestyle. It was felt that forcing her to testify before peers or in a court of record might inhibit those endeavors on her part. Though it was not reversible error to try a paternity case by jury, *State v. Coatney*, 16 Tenn. (8 Yerg.) 210 (1835), there was no right to one in either party.

■ Rooker therefore possessed no statutory right and no common law right to a trial by jury, and there is no constitutional breach by application of T.C.A. § 24–7–112(b)(1). Dismissal is the proper disposition of this case upon conclusion of blood tests excluding Rimer as the father of Rooker's son.

■ Rooker asserts that further tests under T.C.A. § 24–7–112 should have been ordered when requested in Circuit Court. Since the Circuit Court did not possess subject matter jurisdiction, it could not have properly ordered DNA testing. If the Circuit Court had possessed subject matter jurisdiction, there was still no error in its denial of the tests, even if the tests were unknown or unavailable at the time the original blood tests were ordered. Granting a subsequent order was a matter within the discretion of the trial court, and the trial judge was able to weigh the merits of granting or denying a request for DNA tests, including the newness or improvements of a particular test. Apart from the Circuit Court's lack of jurisdiction Rooker has shown no abuse of the trial court's discretion.

■ Rimer's motion for summary judgment before the Circuit Court contained two grounds in addition to the conclusiveness of T.C.A. § 24–7–112(b)(1). He asserted a conclusive presumption given to the uncontradicted testimony of an expert witness under *Hudson v. Capps*, 651 S.W.2d 243 (Tenn.App.1983). Accordingly, Rimer attached the affidavit of the lab technician associated with the blood tests. Rimer also asserted that because Rooker was married to another man at the time of the child's birth, Rooker's husband is conclusively presumed to be the father under *Tyler v. Tyler*, 671 S.W.2d 492, 494 (Tenn.App. 1984).

The lab technician's affidavit was controverted by Rooker's own personal affidavit that Rimer was her only sex partner in the summer of 1971, the time during which her child was necessarily conceived, with the conclusion that Rimer must therefore be the child's father. As noted, Rimer relied

on *Hudson, supra* as dispositive under the circumstances. From the following excerpt from the trial court's order, it appears the Circuit Court agreed:

> Quite apart from the conclusive presumption of paternity among married couples ..., it appears to be the law of this state that the testimony of a plaintiff that she had relations with no other person than defendant during the normal period of conception cannot stand against uncontradicted testimony of an expert witness with respect to scientific matters such as the resultf [sic] of blood tests. This is true, even if the tryer [sic] of fact should credit the testimony of the plaintiff over the expert. *Hudson v. Capps,* 651 S.W.2d 243 (Tenn.App.1983). While the Court might disagree with the logic of that case, it does not feel free to disregard it.

As a matter of common law, contrary to the trial court's analysis, *Hudson* does not stand for the proposition that the trier of fact is bound by the testimony of an expert over that of a plaintiff in paternity cases. The rule from *Hudson* is simply that expert testimony cannot be ignored.

■ One of the purposes for affidavits supporting motions for summary judgment under T.R.Civ.P. 56.05, such as the affidavit under consideration here, is to accelerate litigation, remove insubstantial issues, and confine the trial to genuine issues by allowing the court to review the affidavits as indicative of the testimony which would be presented at a trial, and if the affidavits showed there is no real dispute, to dispose of the issue. Prior to adoption of this rule, if the case could not be disposed of by a demurrer on the pleadings alone or under a plea in abatement, there was a trial. *See* T.R.Civ.P. 56 Committee Comments. This purpose of issue identification through affidavit "previews" of testimony is not furthered if *Hudson* is applied as the Circuit Court applied it.

In *Hudson,* the plaintiff claimed she had no other sex relations which could have resulted in conception of the child, but the defendant denied that he had sexual relations with the plaintiff during that time period. The "unimpeached, uncontradicted testimony of an expert witness," based on a test which was "more than 99.99% accurate," was that the defendant was not the father. *Hudson,* 651 S.W.2d at 247. Judge Crawford, writing for this Court, indicated that if the blood test had been ignored, and the trier of fact merely chose the most credible of the two witnesses, a finding for the plaintiff could have been affirmed. *Id.* However, in light of the uncontroverted expert testimony, under the standard of review as stated in T.R.A.P. 13(d), the evidence in the record preponderated against a finding for the plaintiff, and the trial court was reversed. *Id.* at 247–248.

In *Hudson,* the evidence in the record as a whole, including the expert testimony, preponderated against the testimony of the plaintiff. However, it was not the expert testimony alone which motivated this Court to reverse the trial court in *Hudson,* and while there might be a case where expert testimony alone is enough to merit a holding against a plaintiff who testifies contrary to the expert testimony, *Hudson* does not stand for the proposition that such a weighting is the rule. The weight to be given the expert testimony is for the trier of fact. *Lightfoot v. Hardaway,* 751 S.W.2d 844, 849 (Tenn.App.1988).

■ The second argument upon which Rimer based his motion for summary judgment, the conclusive presumption applied to the mother's husband, comes from *Tyler v. Tyler,* 671 S.W.2d 492 (Tenn.App.1984). Under Tennessee case law, a husband who, at the time of marriage, has knowledge that his wife is pregnant by another man is responsible for support of the child when born. *Id.* at 494. He is regarded by the law as adopting the child into his family at its birth. The adoption is by law a part of the marriage contract, and the law conclusively presumes that the husband is the father of the wife's child. *Tyler, supra, citing State v. Shoemaker,* 62 Iowa 343, 17 N.W. 589 (1883); *Gustin v. Gustin,* 108 Ohio App. 171, 161 N.E.2d 68 (1958). *See also Cunningham v. Golden,* 652 S.W.2d 910, 912 fn. 3 (Tenn.App.1983). Although

there are authorities to the contrary, the rule in Tennessee is that because a husband by his marriage and assumption of position *in loco parentis* has profoundly altered the status, rights and responsibilities of others, in particular the right of the child to support from the natural father, a husband may be required to support a child conceived by another man where the husband was aware of the pregnancy prior to marriage. *Tyler*, 671 S.W.2d at 494. In *Tyler*, it was undisputed that Mr. Tyler was not the natural father of the child, that he knew it, and that he knew the identity of the real father well in advance of the marriage. *Id.* at 493. Mr. Tyler alleged two years after divorce from his wife that he was not the natural father of Mrs. Tyler's son and he should therefore no longer be required to pay child support.

It is clear that the mother may use the rule in *Tyler* to enforce her husband's duty to support her child though he be not the child's father, but the issue in this case is whether the natural father may use the rule in *Tyler* to avoid support of his child. Whether or not the rule in *Tyler* is applicable to all such circumstances, we find it applicable here at least in part due to the length of the marriage and age of the child at the time of divorce. It is alleged in the record that Rooker's marriage ended in divorce in July of 1979, when the son was over seven years old.

For the foregoing reasons, the result reached in the trial court is affirmed. Costs are taxed to the appellant.

CRAWFORD and FARMER, JJ., concur.