IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

---

JAMES E. SIMONS and wife,           Madison Chancery No. 48063
MARGARET B. SIMONS             C.A. No. 02A01-9512-CH-00272

      Plaintiffs/Appellants,          Hon. Joe C. Morris, Chancellor

v.

HERBERT H. REPLOGLE, Jr.,

      Defendant/Appellee.

DAN McBETH, Trenton, Attorney for Plaintiffs/Appellants.

DAVID A. RIDDICK, Holmes, Rich & Sigler, P.C., Jackson, Attorney for Defendant/Appellee.

*REVERSED AND REMANDED*

Opinion filed:

---

**FILED**

**July 8, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

TOMLIN, Sr. J.

James E. Simons and Margaret B. Simons ("plaintiffs") filed suit in the Chancery Court of Madison County against Herbert H. Replogle, Jr. ("defendant") for the purpose of establishing a common boundary line between the parties. Following a bench trial the chancellor established the parties' common boundary line based on the calls in defendant's deed. On appeal plaintiffs have presented one issue for our review: whether the evidence preponderates against the chancellor's finding. In our opinion, the chancellor did err and we accordingly reverse.

Much of the proof in this case is undisputed. For many years the parties and their predecessors in title have been adjoining landowners of two tracts of land on the east side of Christmasville Road in Madison County. The Replogle property is located immediately north of the Simons' property. Replogle's south boundary and Simons' north boundary, for all practical purposes, should be the same. The record reflects that plaintiffs had been residing on their parcel of land for many years. Plaintiff Margaret B. Simons acquired title to the property from her mother by deed

1

in March 1984. This land had been owned by her family since 1937. A short time after Margaret Simons acquired this property, she made a conveyance of an interest in same to create a tenancy by the entireties with her husband.

In 1989, plaintiffs employed Reasons Engineering Co. of Humboldt to make a survey of their property. Plaintiffs testified that the primary purpose of this survey was to have the corners staked and identified so that their children could readily locate the boundaries of their property. As part of the survey, the surveyor placed stakes at the corners of the various lines of plaintiffs' property, including the boundary line separating their property from defendant.

Defendant acquired the 82.5 acre tract adjoining plaintiffs' north boundary in April 1991 by a quitclaim deed from the other heirs of his mother. This parcel of land had been in defendant's family for slightly over one hundred years. The quitclaim deed contained the following metes and bounds description of the property:

> BEGINNING at a black oak, hickory and poplar, John Gateley's northwest corner, runs thence west 175 poles to a stake; thence south 75 poles to a stake, post oak and black oak pointers; thence east 175 poles to a stake and poplar pointers; thence north 75 poles to the beginning, containing about 82 ½ acres, more or less.

In 1992, following the purchase of his property, defendant removed the stake previously installed by plaintiffs' surveyor designating the plaintiffs' north boundary line where it intersected the east margin of the right of way of Christmasville Road, and placed his own corner post 32 feet south of the stake installed by plaintiffs' surveyor. The parties attempted to resolve this dispute without success, and this suit followed.

Following a bench trial, the chancellor issued a memorandum opinion which formed the basis of his later decree. The pertinent provisions of the decree reads as follows:

7.      The Replogle property has been occupied by Mr. Replogle and his family for over one hundred (100) years with the description being 175 poles East-West and 75 poles North-South, which forms a perfect rectangle.

. . .

1.      The North-South boundary line between the property of the Plaintiffs and the Defendant is established according to the deed of Mr. Replogle which has never been questioned in over one hundred (100) years.

Inasmuch as this case was tried below without the intervention of a jury, our scope of review on appeal is de novo upon the record in the trial court.  Findings of fact by the trial court come to this court with a presumption of correctness. Absent an error of law, unless we find that the evidence preponderates against these findings, we must affirm. T.R.A.P. 13(d).  In addition, any and all conflicts in the testimony of the witnesses involving their credibility is to be resolved in the first instance by the trial court, and any findings by that court, based upon credibility, is to be given great weight by this court.  State ex rel Balsinger v. Madisonville, 435 S.W.2d 803, 807 (Tenn. 1968).

Our review of this record reveals that there was no apparent conflict between the parties over the common boundary line between their properties until plaintiffs had a survey made of their property in 1989.  Prior to the conveyance to plaintiff Margaret Simons in 1984, the early description of plaintiffs' property from courthouse records described the land as follows:

Bounded on the north by the land of Mrs. L.R. Cash, on the east by the lands of Mathews, and Mayes, on the south by the lands of W.C. Browning, and C.B. Bettie, Miss Ollie Hinson, and Mrs. S.L. Carter (formerly Todd) and on the east by the Christmasville Road, containing by estimation one hundred acres more or less . . . .

Defendant's property, which was conveyed to his mother and father by deed in 1938, contains the following description:

BEGINNING at a black oak, hickory and poplar, John Gateley's northwest corner, runs thence west 175 poles to a stake; thence south

3

75 poles to a stake, post oak and black oak pointers; thence east 175 poles to a stake and poplar pointers; thence north 75 poles to the beginning, containing about 82 ½ acres, more or less.

Without reviewing it in detail, there was more than sufficient testimony by both parties as to the ownership of their respective tracts of land. However, as can be seen from the legal descriptions appearing in the earlier conveyances of the land of both parties, monuments and other ascertainable points are sorely lacking. The earlier descriptions of plaintiffs' property do identify the western boundary of this property as Christmasville Road. However, it is virtually impossible to locate defendant's property by its earlier description other than that it is located in the old 16th Civil District of Madison County.

The only proof offered by defendant in seeking to establish the southern boundary of his property was produced by defendant himself, a retired surveyor for the Tennessee Department of Transportation. He testified that as far back as 1860, this property was identified by the same description as we referred to above. There is no proof in the record that a survey has ever been made of defendant's property. It is also readily apparent that in the quitclaim deed to defendant from his brothers and sisters, the grantors simply adopted the metes and bounds description created over one hundred years ago. When defendant testified at trial, he presented no plat, nor any testimony of a surveyor. He stated that he installed the concrete marker shown in one of the photographs introduced at trial into what he asserts is the southwest corner of his property, which the parties agree is 32 feet south of the point where plaintiffs' contend that their northwest corner and defendant's southwest corner should be. Defendant presented the following testimony as to how he located this disputed corner:

Q.    (By Mr. Riddick) Could you tell us what's in each of those pictures?
A.    Well, this first picture here is a concrete marker that I put up myself establishing my south corner there. I put that up there and it's not on their property. The County owns 650 feet of right of way out there. If you'll look at that post there and measure it's 29 feet and 6

4

inches, so it is not on the Simonses' (sic) property. It's on the county right of way. That post is sitting 1237.5, 75 poles from my north boundary.

Q. And did you measure it?

A. I measured that with 100 foot steel tape down my west boundary.

Defendant did not identify where his north boundary was located, nor the point from which he says he measured down his west boundary, which is the east boundary of the right of way for Christmasville Road.

To this court, the testimony of the plaintiffs' surveyor, Jeff Tulley, is persuasive and convincing. Tulley testified that prior to surveying the land of the plaintiffs, he completed a survey of plaintiffs' immediate neighbor to the south, Gene Paul Osborne. Tulley testified that he found all the monuments on the Osborne property and established Osborne's boundary lines to his satisfaction. When employed to survey the property of plaintiffs, Tulley testified that he started at Osborne's northwest corner, which is plaintiffs' southwest corner, in the margin of the Christmasville Road, and measured plaintiffs' land. He testified that from having surveyed the other calls of Osborne's property, his location of the northwest corner of Osborne's tract was correct. This was the beginning point used by the surveyor in measuring plaintiffs' land. Tulley stated that he preceded north the length of the calls of plaintiffs' deed, and by following these calls he located plaintiffs' northwest corner (defendant's southwest corner) four feet north of a fence corner. He then preceded to work out the balance of the calls on plaintiffs' property.[1]

Tulley further testified that he measured the distance in the call in plaintiffs' deed along Christmasville Road north from the northwest corner of the Osborne tract for the stated distance, and that he also measured the Christmasville Road

---

[1]Parenthetically, we note that for some substantial distance plaintiffs' property is adjacent to and forms the east boundary of defendant's property. No complaint has been made by defendant of this particular line.

5

call of defendant's deed along Christmasville Road south the stated distance in defendant's deed. Tulley stated that these measurements almost "dead centered" on the fence corner.

Tulley stated that he walked the north and south boundary line following his survey with plaintiff and Charlie Cash, defendant's uncle, showing them where the corners were. Tulley stated that no one told him where to put the boundary lines. He further testified that Cash showed him where the old fence row was and that Cash told him that the fence was the approximate boundary between the parties. According to Tulley, Simons never tried to tell him where the boundary lines were.

In our opinion, the evidence not only preponderates against the chancellor's findings, but preponderates in favor of plaintiffs' assertion as to the location of the disputed boundary. Accordingly, the decree of the chancellor is reversed. This court is of the opinion that the common boundary line between the parties is to be established and fixed in accordance with the survey and plat of the surveyor Tulley. This cause is remanded to the trial court for such further and other proceedings as are necessary not inconsistent with this opinion. Costs in this cause on appeal are taxed to defendant, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.


_____
CRAWFORD, P.J.               (CONCURS)


_____
HIGHERS, J.               (CONCURS)


6