OAK HIGHLANDS HOMEOWNERS'           )
ASSOCIATION, INC.,                  )
                                    )
        Plaintiff/Appellant,        )
                                    )       Davidson Chancery
                                    )       No.  94-530-II
VS.                                 )
                                    )       Appeal No.
                                    )       01-A-01-9511-CH-00535
CONTINENTAL DEVELOPMENT AND         )
CONSTRUCTION, INC., and             )
NICHOLAS S. PSILLAS,                )
                                    )
        Defendants/Appellees.       )

**FILED**

**May 8, 1996**

**Cecil W. Crowson
Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


HONORABLE C. ALLEN HIGH, CHANCELLOR


JAMES R. TOMKINS
Jennings and Tomkins
Suite 2240-L & C Tower
Nashville, Tennessee 37219
ATTORNEY FOR PLAINTIFF/APPELLANT


IRWIN J. KUHN
Eisenstein, Moses and Mossman
Suite 500, One Church Street Bldg.
Nashville, Tennessee 37201
ATTORNEY FOR DEFENDANTS/APPELLEES


AFFIRMED AND REMANDED


                        HENRY F. TODD
                        PRESIDING JUDGE, MIDDLE SECTION


CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

OAK HIGHLANDS HOMEOWNERS'   )
ASSOCIATION, INC.,   )
  )
    Plaintiff/Appellant,   )
  )    Davidson Chancery
  )    No. 94-530-II
VS.   )
  )    Appeal No.
  )    01-A-01-9511-CH-00535
CONTINENTAL DEVELOPMENT AND   )
CONSTRUCTION, INC., and   )
NICHOLAS S. PSILLAS,   )
  )
    Defendants/Appellees.   )


O P I N I O N


The captioned plaintiff has appealed from the non-jury dismissal of its suit to enforce

restrictions and has presented the following issues for review:

> 1. Whether Continental Development & Construction, Inc.
> ever applied for architectural approval as to the nine lots upon
> which it built houses.
>
> 2. Whether the Court erred in allowing the testimony of
> Nicholas Psillas about the Nashville 50 joint venture's response
> or lack of response to his alleged request of architectural
> approval.
>
> 3. Whether Oak Highlands Homeowners' Association, Inc. is
> entitled to injunctive relief and a judgment against Continental
> Development & Construction, Inc. for the cost of removing
> overhead electrical connections and replacing them with
> underground connections at the nine lots upon which it built
> houses.


Prior to October 17, 1992, a recorded Declaration of Restrictive Covenants required

approval of plans and specifications of proposed construction by the developer of the

subdivision. Effective October 17, 1992, the required approval was that of the Board of

Directors of plaintiff Association.


The judgment of the Trial Judge states:

> . . . Defendant Continental Development and Construction,
> Inc. submitted a request for architectural approval to the
> Developer when it still maintained the right to grant
> architectural approval under the Declaration of Restrictive

Covenants, that the developer failed to reject said request within thirty days, and that therefore, the approval process was complied with by Continental Development and Construction, Inc.; . . . .

The restriction in effect before October 17, 1992, stated:

[n]o building, fence, wall, or other structure (including a detached garage) shall be commenced, erected, or maintained upon the Properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to the harmony of external design and location in relation to surrounding structures and topography by the Developer. . . . In the event said Developer . . . fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and this Article will be deemed to have been fully complied with.

Plaintiff insists that there is no evidence that defendants requested approval of their plans prior to June 8, 1993.

The defendant, Psillas testified:

Q. Before you entered into the option contract, did you review the restrictive covenants that were filed for the Oak Highlands Subdivision?

A. Yes, I did.

Q. Are you aware there is a clause in there requiring architectural approval of homes you expected to built? (sic)

A. Yes, I did.

Q. Did you take plans to Nashville 50 Joint Venture regarding - take the plans which you expected to obtain?

A. Yes, I did.

Q. And these were the plans for the lots that you wanted to build at Oak Highlands?

A. That's correct.

* * *

Q. How did you go about attempting to obtain approval of the plans?

-3-

A.  By just giving them copies of floor plans of the houses.

Q.  Where did this take place?

A.  It took place at Southeast Title's offices in Green Hills.

Q.  When did it take place?

A.  Sometime in the Spring of 1992.

Q.  After you submitted those plans, did any one from
Nashville 50 Joint Venture object to the plans?

A.  Not at all.

At this point, plaintiff stated the following objection:

Mr. Tomkins:  Objection, your Honor.  That's hearsay.
Whether it's negative or positive hearsay, it's still hearsay.

The Trial Court properly overruled the objection.  The delivery of the plans to the developer was an act, of which the witness had personal knowledge.  The failure of the developer to respond was a negative fact of which the witness had personal knowledge. Hearsay was not involved in the quoted testimony.

Plaintiff relies upon other testimony that the plans submitted were not adequate for the purpose, but no evidence is cited that the developer made any objection to the form or substance of the plans.

Plaintiff also relies upon plaintiff's action in submitting plans again in 1993 to plaintiff's Board.  If the rights of defendants were established by submission of plans to the developer and lack of objection, such rights were not necessarily waived as a matter of law by resubmission to plaintiff's Board.  Such action was a circumstance to be considered in respect to the weight to be given the quoted testimony.  However, it is not a conclusive circumstance, and the Trial Judge saw fit to believe the quoted testimony and conclude accordingly.

Any conflict in testimony requiring determination of credibility of witnesses is for the Trial Court and binding on the reviewing court unless other real evidence compels a contrary conclusion. *State, ex rel Balsinger v. Town of Madisonville,* 222 Tenn. 272, 435 S.W.2d 803 (1968); *Jackson for Bohan Group, Inc. v. Bohan*, Tenn. 1993, 861 S.W.2d 241. No real evidence is found to compel a contrary conclusion.

Moreover, the evidence does not preponderate against the finding of the Trial Judge that plans were submitted to the developer and approved by failure to approve or disapprove within thirty days.

The foregoing disposes of plaintiff's first two issues and precludes the necessity of discussing the third issue.

However, there is another ground which supports the conclusion of the Trial Court. The particular complaint of plaintiff is that defendants failed to conform to the practice of most builders in the development in planning and arranging for electrical service to be delivered by underground conductors.

The record does not reflect who had the power to determine whether wires should be overhead on poles or underground. It is generally known that electric wires and supporting poles within the public right of way are installed by and are the property of the electric utility which would presumably have the power and authority to determine their location. It is not generally known who installs and owns the wires from the public way to a residence. There is no evidence that the constructor of a residence has any control over the manner of connecting a residence to the wires of the utility in the public way.

Under these circumstances, this Court is unable to find that the location and nature of connections from a residence to the electric utility lines is comprehended within the

phraseology of the restriction, i.e: "building, fence, wall or other structure (including a detached garage). - plans and specifications showing the nature, kind, shape, height, materials and location of same."

The prohibition of overhead wires on private property should have been specifically mentioned in the restriction. Whether the Board has any control of the location of utilities in the public way is beyond the scope of this appeal.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE