# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | |
|---|---|
| **MARQUIETTA AVONNE HEATON HAND,** | ) |
| | ) |
| Plaintiff/Appellant, | ) Humphreys Chancery No. 22-471 |
| | ) |
| VS. | ) No. 01A01-9607-CH-00325 |
| | ) |
| **JAMES THOMAS HAND,** | ) |
| | ) |
| Defendant/Appellee. | ) |

APPEAL FROM THE CHANCERY COURT OF HUMPHREYS COUNTY
AT WAVERLY, TENNESSEE
THE HONORABLE ALLEN W. WALLACE, CHANCELLOR

**CLIFFORD McGOWAN, JR.**
Waverly, Tennessee
**JACK NORMAN, JR.**
**THOMAS F. BLOOM**
Nashville, Tennessee
Attorneys for Appellant

**FILED**

April 18, 1997

Cecil W. Crowson
Appellate Court Clerk

**DAN R. BRADLEY**
Waverly, Tennessee
**BARBARA G. MEDLEY**
Lewisburg, Tennessee
Attorneys for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Plaintiff Marquietta Avonne Heaton Hand (the Wife) appeals the final decree of divorce entered by the trial court which distributed the parties' property and ordered the Wife to pay the attorney's fees of Defendant/Appellee James Thomas Hand (the Husband). On appeal from the final decree, the Wife contends that the trial court erred in three respects: (1) in failing to award the marital residence to the Wife; (2) in awarding the divorce to the Husband based on the Wife's inappropriate marital conduct; and (3) in ordering the Wife to pay the Husband's attorney's fees. We affirm.

At the time of their marriage in 1979, the parties lived in Houston, Texas. Shortly after the parties' marriage, the Husband quit his job with Poole Drilling Company. Although the parties knew beforehand that the job would require the Husband to work in Italy for approximately one month, a dispute later arose between the parties regarding this job requirement. The Wife informed the Husband that she could not accompany him to Italy because she had to care for her mother, who had cancer and was undergoing chemotherapy. Rather than go to Italy without the Wife, the Husband quit.

Instead of obtaining outside employment, the Husband went to work for the Wife on a part-time basis remodeling houses on properties owned by the Wife in Texas. Although the Wife minimized the Husband's labor and other contributions towards the Texas properties, the Husband testified that he performed extensive remodeling projects on the houses, including wallpapering, painting, carpeting, tiling, carpentry, air-conditioning and electrical work, landscaping, roofing, and other repairs. The parties allowed one of the properties to be foreclosed, but the Wife, a licensed real estate broker, sold the other three properties at substantial profits.

In January 1983, the parties decided to move to Tennessee to be closer to the Husband's family. The parties bought 109 acres of property in Humphreys County from the Husband's uncle for $50,000, and they proceeded to build a home on the property. Although the Husband testified that he made some monetary contributions towards acquisition of the property and construction of the home, the Husband acknowledged that

2

the bulk of the parties' new marital residence was acquired with funds from the Wife's mother and funds from the sale of the Wife's Texas properties. Despite his relatively modest monetary contributions, the Husband testified that he personally performed large portions of the construction of the marital residence. Among other tasks, the Husband testified that he sealed the outside walls; insulated the walls; partitioned the downstairs; did plumbing, electrical, and duct work; installed windows, flooring, and exterior and interior doors; and painted. As with the Texas properties, the Wife's testimony minimized the Husband's labor and other contributions towards construction of the marital home.

During construction of the marital residence, which lasted about two years, the Husband took care of the parties' cattle, repaired fences around the property, and did other part-time work. In 1985 or 1986, the Husband started his own electrical business, which produced some income. The Wife went on jobs with the Husband, and she learned to help install wiring. For the most part, however, the parties lived off of income produced by the Wife's assets.

In September 1993, the parties learned that the Husband had heart disease and cancer. The Husband first underwent bypass surgery for his heart condition, and he later had surgery to remove a cancerous kidney and part of this bladder. Between surgeries, while the Husband was recuperating at home, the Wife insisted that the Husband sign a quitclaim deed conveying the Husband's interest in the marital residence to the Wife. Both parties had adult children from previous marriages, and the Wife, convinced that the Husband would die as a result of his illness, was concerned about future estate problems. According to the Husband, the Wife stated that she "didn't want to have any lawsuits like the problem that Conway Twitty and all them were having." Because the Husband was "under heavy medication" and did not want to argue, the Husband gave in to the Wife's demands and executed the quitclaim deed.

The Wife told a very different story concerning the Husband's execution of the quitclaim deed. According to the Wife, the conveyance took place as the result of a prior

3

agreement between the parties. In order to induce the Wife to move with him to Tennessee and to acquire the marital residence, the Husband allegedly agreed that, when the Wife reached fifty-five years of age, the Husband would quitclaim his interest in the property to the Wife. The Wife testified that, as additional consideration for the conveyance, the Wife paid $68,439 out of her separate funds to extinguish the parties' line of credit, which was secured by the marital residence.

After the Husband returned home from his last surgery, the parties' relationship quickly deteriorated. Within months, the Wife filed this complaint seeking a divorce on the grounds of inappropriate marital conduct and irreconcilable differences, and the Husband counterclaimed.

In its final decree, the trial court distributed the parties' vehicles, household furnishings and appliances, and other personal property. The court awarded the marital residence, including the 109 acres on which the residence was located, to the Wife; however, the court awarded the Husband a judgment lien against the marital residence in the amount of $125,000, one-half of the property's value. The court also ordered the Wife to pay the Husband's attorney's fees, in the amount of $5,000, as alimony in solido. The Wife was permitted to retain her separate property, including $9,000 in cash, a $100,000 certificate of deposit which the Wife inherited from her mother, and several undeveloped parcels of land in Texas which had a total value of approximately $89,000.

On appeal, the Wife contends that the trial court erred in awarding the Husband a $125,000 judgment lien against the marital residence because (1) the property was acquired primarily with the Wife's separate funds, and (2) the Husband had executed a quitclaim deed conveying all of his interest in the property to the Wife.

As an initial matter, we must reject the Wife's claim that the parties' residence did not constitute marital property because it was acquired primarily with the Wife's separate funds. At trial, it was undisputed that the majority of the funds used to purchase the marital

4

residence came from the Wife's mother and from the sale of the Wife's properties in Texas. Before using these funds to purchase the marital residence, however, the Wife deposited a large portion of the funds into the parties' joint checking account. Further, when the parties purchased the marital residence, the property was titled in both parties' names. Under these circumstances, the trial court did not err in concluding that, under the doctrine of transmutation, the marital residence constituted marital property. McClellan v. McClellan, 873 S.W.2d 350, 351-52 (Tenn. App. 1993); Barnhill v. Barnhill, 826 S.W.2d 443, 452 (Tenn. App. 1991).

As for the Wife's second argument concerning the marital residence, we conclude that the trial court did not err in refusing to recognize the quitclaim deed executed by the Husband. As recently stated by our Supreme Court, "[f]or the purposes of property division in a divorce, '[i]n the final analysis, the status of property depends not on the state of its record title, but on the conduct of the parties.'" Cohen v. Cohen, 937 S.W.2d 823, 833 n. 12 (Tenn. 1996) (quoting Mondelli v. Howard, 780 S.W.2d 769, 774 (Tenn. App. 1989)).

In accordance with this principle, this court has refused to recognize a quitclaim deed executed by a husband in favor of his wife under similar circumstances. In Abney v. Abney, 1991 WL 16255 (Tenn. App. 1991), perm. app. denied (Tenn. Sept. 9, 1991), the wife insisted that the husband execute a deed conveying to the wife certain real property which the parties formerly held as tenants by the entireties. The husband recently had obtained a pilot's license, and the wife asked him to execute the deed "for liability purposes" because she feared "that the property might become a part of some future claim against her husband as a result of a future airplane crash." Abney, 1991 WL 16255, at **2-3. This court refused to give effect to the deed, and affirmed the trial court's decision to divide the property between the parties. Id.

In the present case, in refusing to give effect to the quitclaim deed, the trial court found that the parties did not intend for the Husband to make a gift of his interest in the marital residence to the Wife. The trial court found that the parties instead entered into the

5

transaction in order to avoid any future disputes over the Husband's estate in the event that the Husband died as a result of his illness. In light of these findings, the trial court did not abuse its discretion in awarding the Husband a one-half interest in the marital residence.

We also affirm the trial court's award of a divorce to the Husband on the ground of the Wife's inappropriate marital conduct. At trial, the issue of which party was at fault in causing the breakup of the marriage was sharply disputed. Although both parties agreed that the marriage deteriorated rapidly after the Husband returned home from his last surgery, from there the parties' theories diverged. The Wife testified that, after his illnesses, the Husband became hostile and difficult to get along with, went for periods as long as two weeks without bathing, and refused to obtain gainful employment even though doctors said he could return to work. The Husband, on the other hand, testified that, after he returned home from the hospital, the Wife "was a totally different person" in that she became "real hateful," quit cooking for him, and refused to sleep with him.

Where the decision of the trial court with regard to a specific issue hinges on the credibility of the witnesses, the trial court's decision is entitled to great weight in this court. "Any conflict in testimony requiring a determination of the credibility of a witness or witnesses is for the trial court and binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary." Hudson v. Capps, 651 S.W.2d 243, 246 (Tenn. App. 1983). In awarding the Husband a divorce on the ground of inappropriate marital conduct, the trial court apparently believed the Husband's version of the events leading up to the deterioration of the parties' marriage. Brewer v. Brewer, 869 S.W.2d 928, 934 (Tenn. App. 1993). Despite the Wife's testimony to the contrary, we are not compelled to reach a different result.

Finally, we affirm the trial court's award of attorney's fees to the Husband. The decision to award attorney's fees in a divorce action rests within the sound discretion of the trial court, and on appeal, this court will not interfere with the trial court's decision, absent a showing of an abuse of that discretion. McCarty v. McCarty, 863 S.W.2d 716, 722

6

(Tenn. App. 1992). In the present case, the Husband was awarded some personal property and a $125,000 judgment lien against the marital residence. The Husband, however, was not awarded any substantial, liquid assets, and he testified that, in order to pay his living expenses since the parties' separation, he had been forced to borrow money from relatives. In contrast, the Wife, in addition to being awarded the marital residence (subject to the Husband's lien), was awarded separate property with a total value of almost $200,000. This property included $9,000 in cash, a $100,000 certificate of deposit, and real property valued at approximately $89,000. In light of these factors, as well as the trial court's finding that the Wife was at fault in the breakup of the marriage, we conclude that the court did not abuse its discretion in ordering the Wife to pay the Husband's attorney's fees in the amount of $5,000. Storey v. Storey, 835 S.W.2d 593, 597-98 (Tenn. App. 1992).

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to the Wife, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.

7