# IN THE COURT OF APPEALS OF TENNESSEE,
## AT KNOXVILLE

FILED

**May 8, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

|   |   |   |
|---|---|---|
| **BETTY J. COLLINS, ET AL**, | ) | Hamblen County Chancery Court |
|   | ) | No. 96-99 |
| Plaintiffs/Appellants. | ) |   |
|   | ) |   |
| VS. | ) | C.A. No. 03A01-9708-CH-00326 |
|   | ) |   |
| **DAVID COLLINS**, | ) |   |
|   | ) |   |
| Defendant/Appellee. | ) |   |
|   | ) |   |

_____

From the Chancery Court of Hamblen County at Morristown.
**Honorable Thomas R. Frierson, II, Chancellor**

**Kelley Hinsley,** Morristown, Tennessee,
Attorney for Plaintiffs/Appellants.

**C. Dwaine Evans**, EVANS & BEIER, Morristown, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiffs Betty J. Collins, Panther Park Missionary Baptist Church, and six Church trustees appeal the trial court's final judgment which established the boundary line between the parties' respective properties. We affirm the trial court's judgment based on our conclusion that the evidence does not preponderate against the trial court's finding that an existing fence row represents the boundary line between the properties.

Betty Collins and the Church own separate parcels of real property immediately northwest of real property owned by Defendant/Appellee David Collins. All of the parcels originally were part of the Pence Collins Estate. After Pence Collins died, his estate was partitioned among his three sons, Clarence, Bill, and David. This partition was accomplished in 1967 pursuant to a survey performed by P.P. (Pete) Neblett. Pursuant to the 1967 Neblett survey, the original partition deeds indicated that the boundary line between Clarence Collins' and David Collins' respective properties was marked by a pin or a stake in the center of a gravel road. The gravel road since has been paved and now is known as Cameron Road.

In 1971, Clarence Collins and his wife, Appellant Betty Collins, deeded a portion of their property to the Panther Creek Baptist Church. In describing the property conveyed, the deed to Panther Creek Baptist Church relied upon the 1967 survey performed by Pete Neblett. In 1975, Clarence and Betty Collins deeded the same tract of land to a successor entity known as Panther Park Missionary Baptist Church. Again, the deed referred to the 1967 Neblett survey.

In 1992, Clarence Collins conveyed a portion of his property to his brother, Appellee David Collins, because David Collins wanted to increase the width and depth of his property by an additional sixty-five feet. The quitclaim deed executed by Clarence Collins referred to a survey performed that same year by William Shockley, a registered land surveyor commissioned by David Collins. The survey included the property already owned by David Collins and the additional sixty-five feet being acquired. As a result of the various real estate transactions which had taken place over the years, David Collins' property now shared a common boundary with property owned by Clarence and Betty Collins and property owned by the Church. In performing his survey, therefore, Shockley was required to determine the location of the common boundary line.

When Shockley performed his survey in 1992, he could not reconcile his field observations and his calculations with the 1967 survey performed by Pete Neblett. After performing various calculations, Shockley realized that the 1967 Neblett survey contained some degree of error because the survey did not close properly, although Shockley could not pinpoint the precise source of the error. Accordingly, in performing his own survey, Shockley relied not only upon the 1967 survey but upon his field observations, his calculations, and his review of the relevant property deeds. Some of Shockley's observations included an iron pin and a post which served as corner markers of David Collins' property. Shockley acknowledged that, if these corner markers were wrong, then his entire survey would be incorrect. Nevertheless, after examining the 1967 Neblett survey, the property deeds, and the physical evidence, as well as performing the required calculations, Shockley concluded that the corner markers were correctly located and, further, that the boundary line between the properties was marked by an existing fence row which had grown up over the years.

When he performed his survey, Shockley marked the boundaries of David Collins' property with iron pins and bright orange flags. At that time, neither Clarence Collins nor representatives of the Church challenged Shockley's placements of the flags. This boundary dispute did not arise until after the death of Clarence Collins in 1993.

Contending that David Collins wrongfully had encroached upon their properties by a distance of approximately ten feet, Betty Collins, the Church, and the Church trustees filed a complaint to establish the parties' common boundary line. At trial, the Plaintiffs/Appellants sought to show that the 1992 Shockley survey was in error and that the boundary line between the parties' respective properties was marked by a pin or stake in the center of Cameron Road as indicated on the 1967 Neblett survey. At the conclusion of the bench trial, however, the trial court ruled in favor of David Collins and found that the common boundary line was the old fence row as shown on the 1992 Shockley survey. Accordingly, the trial court entered a judgment establishing the existing fence row as the boundary line.

The Appellants now contend that the trial court erred in establishing the common boundary line in accordance with the 1992 Shockley survey because (1) Shockley's survey was based

on a corner marker which was placed by David Collins rather than by a previous surveyor, and (2) lay witnesses testified that the old fence row was not the common boundary line.

We conclude that both of these arguments are without merit. It is true that David Collins admitted personally placing one of the corner markers upon which Shockley relied in performing his survey. Collins testified, however, that he drove the iron pipe into the ground within one inch of the stake placed by Neblett and that he accomplished this feat in 1967 shortly after Neblett completed his survey. Moreover, Shockley's survey was not dependent upon the location of the iron pipe which David Collins placed in the ground. In performing his survey, Shockley also relied on other field observations, as well as his own calculations, the property deeds, and the 1967 Neblett survey.

As for the lay witnesses who testified that the old fence row was not the recognized common boundary line, we note that other lay witnesses testified to the contrary. Wiley Willie Williams, the former pastor of the Church's predecessor, Panther Creek Baptist Church, testified that when Clarence Collins deeded the property to the church, he told Williams that the old fence row was the property's boundary line. David Collins also testified that the old fence row was the recognized boundary line between the properties.

Inasmuch as this case was tried by the court below sitting without a jury, our review of the trial court's judgment is governed by the Tennessee Rules of Appellate Procedure, which provide that, in civil actions, the appellate court's review of the trial court's findings of fact "shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984) (quoting T.R.A.P. 13(d)). Under this standard, when a conflict in testimony requires the trial court to make a determination regarding the credibility of a witness or witnesses, such a determination is "binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary." *Hudson v. Capps*, 651 S.W.2d 243, 246 (Tenn. App. 1983). This standard also applies in boundary disputes when the trial court, as the finder of fact, is required to choose between two competing surveys. *See, e.g.*, *Horne v. Warmath*, No. 02A01-9509-CH-00201, 1996 WL 465549 (Tenn. App. Aug. 16, 1996), *perm. app. denied* (Tenn.

Jan. 6, 1997); *Montgomery v. Welch*, 1989 WL 51532 (Tenn. App. May 17, 1989); *McMahan v. Douglas*, 1988 WL 20542 (Tenn. App. Mar. 4, 1988), *perm. app. denied* (Tenn. May 23, 1988). After carefully reviewing the record in this case, we conclude that the evidence does not preponderate against the trial court's finding that the existing fence row marks the common boundary line between the parties' respective properties as shown on the 1992 Shockley survey.

The Appellee has filed a motion seeking damages for a frivolous appeal. Upon consideration of the record on appeal, the briefs of the parties, and oral argument, we find that the Appellee's motion is not well-taken and, accordingly, it is denied.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to Appellants, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)