# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER 15, 2001 Session

## EVA WOODS v. COUNTY OF DYER, ET AL.

### Direct Appeal from the Circuit Court for Dyer County
### No. 99-158; The Honorable Lee Moore, Judge

---

### No. W2001-00224-COA-R3-CV - Filed January 4, 2002

---

This appeal arises from the Appellees' denial of an application for a beer permit filed by the Appellant. The Appellant filed a petition for writ of certiorari against the Appellees in the Circuit Court of Dyer County. Following a hearing on the petition for writ of certiorari, the trial court affirmed the decision of the Appellees and dismissed the petition for writ of certiorari. The Appellant appeals the dismissal of the petition for writ of certiorari by the Circuit Court of Dyer County. For the reasons stated herein, we affirm the trial court's decision.


### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Charles M. Agee, Jr., Dyersburg, TN, for Appellant

J. Michael Gauldin, Dyersburg, TN, for Appellees

### OPINION

### I. Facts and Procedural History

On April 18, 1991, Lloyd Hardville ("Mr. Hardville"), Calvin Johnson ("Mr. Johnson"), and Dwight Connell ("Mr. Connell") filed an application for a beer permit for the Merry Go Round Club on Connell Avenue in Tigrett, Tennessee. On May 28, 1991, the Dyer County Beer Board issued a beer permit to Mr. Hardville and Mr. Connell for the Merry Go Round Club. The Dyer County Beer Board ruled that Mr. Johnson could not be a joint owner of the Merry Go Round Club because of his prior felony drug conviction.[1] The beer permit stated that it was not transferable.

---

[1] Section 57-5-105 of the Tennessee Code states, in pertinent part:

(continued...)

Shortly after the beer permit was issued, Mr. Hardville ceased all involvement with the Merry Go Round Club. In June, 1994, Mr. Hardville notified the Dyer County Beer Board in writing that he had ceased all involvement with the Merry Go Round Club on or about January 1, 1992. The Appellant, Eva Woods ("Ms. Woods"), claims that Mr. Connell continued to operate the Merry Go Round Club from May, 1991 through January, 1999. The Appellees, Dyer County and the Dyer County Beer Board, claim that Mr. Connell had minimal involvement with the Merry Go Round Club from May, 1991 through December, 1993 when he, too, ceased all involvement with the Merry Go Round Club. Dyer County and the Dyer County Beer Board claim that Mr. Johnson operated the Merry Go Round Club from 1994 forward.

On January 26, 1999, Dyer County attorney, Mike Gauldin ("Mr. Gauldin"), sent a letter to Mr. Johnson acknowledging that Mr. Johnson had signed an application for a business tax license as the owner of the Merry Go Round Club. The letter noted that the Dyer County Beer Board had no record of Mr. Johnson receiving a beer permit in his name. The letter stated that Tennessee law provides that a beer permit expires upon change in ownership and cannot be transferred to another owner. On April 7, 1999, Mr. Gauldin sent a letter to Sheriff Jeff Holt advising him that the Merry Go Round Club was operating without a proper beer permit.

On June 23, 1999, Ms. Woods[2] filed an application for a beer permit for the Merry Go Round Club with the Dyer County Beer Board. On July 15, 1999, the Dyer County Beer Board denied the application because the Merry Go Round Club was located within 2,000 feet of a church. The Dyer County legislative body had adopted a resolution ("the Resolution") on June 14, 1993 which enacted a 2,000 foot rule for the sale of beer in Dyer County. Section one of the Resolution stated that no permit for the sale of beer would be issued for any location within 2,000 feet of a school, church, or place of public gathering. Section two of the Resolution stated that it would not operate to suspend, revoke, or deny a permit to a business engaged in selling beer which is located within 2,000 feet of a school, church, or place of public gathering if a valid permit had been issued to any business on that same location as of January 1, 1993, provided that this did not apply if beer was not sold at that location during any continuous six month period after January 1, 1993. The

---

[1](...continued)

> (b) In order to receive a [beer] permit, an applicant must establish that:
> (3) No person, firm, corporation, joint-stock company, syndicate, or association having at least a five percent (5%) ownership interest in the applicant has been convicted of any violation of the laws against possession, sale, manufacture, or transportation of beer or other alcoholic beverages or any crime involving moral turpitude within the past ten (10) years;
> (4) No person employed by the applicant in such distribution or sale has been convicted of any violation of the laws against possession, sale, manufacture, or transportation of beer or other alcoholic beverages or any crime involving moral turpitude within the past ten (10) years.

TENN. CODE ANN. § 57-5-105(b)(3)-(4) (Supp. 2000).

[2]Ms. Woods is Mr. Johnson's aunt and owns the Merry Go Round Club building and the property upon which the building is located.

Dyer County Beer Board found that the beer permit issued to Mr. Hardville and Mr. Connell was no longer valid and had not been valid for a period of six months or longer prior to the filing of the application by Ms. Woods.

On September 14, 1999, Ms. Woods filed a petition for writ of certiorari against Dyer County and the Dyer County Beer Board in the Circuit Court of Dyer County. The petition for writ of certiorari alleged that the action of the Dyer County Beer Board in denying the application was unreasonable, illegal, arbitrary, and capricious. The petition for writ of certiorari requested that the trial court order the appropriate permit be issued to Ms. Woods for the authorized sale of beer at the Merry Go Round Club. On November 4, 1999, Dyer County and the Dyer County Beer Board filed an answer to the petition for writ of certiorari.

A hearing on the petition was held on December 11, 2000. Ms. Woods' proof consisted of the testimony of L.Z. Johnson, Mr. Johnson's uncle, and Mr. Johnson. Dyer County and the Dyer County Beer Board's proof consisted of the deposition of Mr. Connell and a transcript of the July 15, 1999 Dyer County Beer Board meeting. L.Z. Johnson testified that the Merry Go Round Club closed between April and June, 1999 after the sheriff's office informed them they would have to cease operating for failure to have a valid beer permit. L.Z. Johnson stated that Mr. Johnson worked at the Merry Go Round Club most of the time. L.Z. Johnson indicated that Mr. Johnson had operated the Merry Go Round Club from the time Mr. Hardville and Mr. Connell applied for a beer permit in 1991. L.Z. Johnson testified that Mr. Connell informed him in late 1998 or early 1999 that he wanted the beer permit terminated so that a new beer permit could be issued to someone else. L.Z. Johnson testified that Mr. Johnson showed him the January 26, 1999 letter from Mr. Gauldin.

Mr. Johnson testified that he worked for the Merry Go Round Club for the past ten years. Mr. Johnson stated that Mr. Connell owned the Merry Go Round Club and Mr. Hardville had not owned the Merry Go Round Club since 1994. Mr. Johnson testified that he was responsible for opening the Merry Go Round Club but did not get paid. Mr. Johnson testified that he worked for Mr. Connell at the Merry Go Round Club but was not considered a partner, manager, or employee. Mr. Johnson agreed that he told the Dyer County Beer Board that he was "in partners" with Mr. Hardville and Mr. Connell when the Merry Go Round Club began. Mr. Johnson testified that he was not a partner with Mr. Hardville and Mr. Connell but denied that he had misspoke to the Dyer County Beer Board. Mr. Johnson admitted that he told the Dyer County Beer Board that he managed the Merry Go Round Club. Mr. Johnson testified that he never represented himself as the owner of the Merry Go Round Club to the county clerk's office. Mr. Johnson agreed that he signed two business tax license applications as the owner of the Merry Go Round Club but claimed that this was a mistake. Mr. Johnson testified that he did not recall receiving the January 26, 1999 letter from Mr. Gauldin.

Mr. Connell testified by deposition that Mr. Hardville got out of the Merry Go Round Club business shortly after they obtained the beer permit. Mr. Connell testified that after Mr. Johnson found out that he could not be an owner in the Merry Go Round Club, Mr. Johnson was basically overseeing the business. Mr. Connell stated that he and Mr. Johnson were running the business. Mr. Connell testified that he quit the business at the end of 1993, stating the following:

Q.        And then at the end of '93, did you –

A.        Yeah, I had –

Q.        – quit?

A.        Yeah. . . .

* * *

Q.        So basically, [Mr. Johnson] ran the business, operated the business.

A.        I told [Mr. Johnson] "go ahead and run it," you know, "I'm still partner, you know, every now and then I may just walk up there and see what's going on." But I said, "you go ahead and run it, you know. I'm too busy. I can't be there. But I'll be in and out, you know." Basically is all I was doing. Because it was taking up too much of my time. "I can't be there." I told him, "you take care of everything.

* * *

Q.        From 1993 when you – when it was taking up too much of your time, did you consider that you still owned the business?

A.        Well, I considered I still had the beer license. I still considered that.

* * *

Q.        Well, I'm trying to understand what your involvement was in the business after 1993 when –

A.        Basically, just the beer license in my name.

Q.        Okay. But the fact of the matter is everything else, Mr. Johnson –

A.        [Mr. Johnson], yeah, [Mr. Johnson] had control of everything after that. He's overseeing everything.

Mr. Connell testified that he bought the beer for the Merry Go Round Club. Mr. Connell stated that he told Mr. Johnson at the end of 1997 that he wanted his name off the beer permit.

On December 21, 2000, the trial court issued a memorandum opinion. The trial court found the following:

> Although Mr. Johnson denied owning the business when he testified at trial, the testimony of Mr. Connell along with other evidence introduced makes it very clear that Calvin Johnson was, in fact, the operator of the business from day one and certainly after Mr. Hardville withdrew from the business. The club was operated from day one without a legal permit. It is also clear from the law cited above that Mr. Johnson could not have been the operator of the business after the 1991 permit was obtained without violating T.C.A. § 57-5-103. Also the permit in 1991 was obtained in the names of Hardville and Connell. When Hardville withdrew from the business, the permit should have been returned to the county within fifteen (15) days because of the change in ownership or the business name. Assuming arguendo, even if there was a legally held permit, the permit pursuant to T.C.A. § 57-5-103(6) expired when Mr. Hardville withdrew from the business. The club was run thereafter without a legal permit. Consequently, a valid permit was not issued and has not been in effect since January 1, 1993, or during any six-month continuous period after January 1, 1993.

The trial court found that the Dyer County Beer Board properly denied Ms. Woods' application for a beer permit due to a violation of the Resolution. On January 3, 2001, the trial court entered a final judgment incorporating by reference its December 21, 2000 memorandum opinion. The trial court affirmed the decision of the Dyer County Beer Board and dismissed the petition for writ of certiorari. This appeal followed.

## II. Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. RULE 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). In this regard, when a conflict in testimony requires the trial court to make a determination regarding the credibility of a witness or witnesses, such a determination is "binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary." Hudson v. Capps, 651 S.W.2d 243, 246 (Tenn. Ct. App. 1983).

## III. Law and Analysis

The following issues, as we perceive them, are presented for our review:

1. Whether the withdrawal of one owner from a business constitutes a change of ownership such that a new beer permit must be issued; and
2. Whether a beer permit is transferrable to a new owner when the original co-owners of a business listed on a beer permit each withdraw from the business.

We can resolve this appeal on the second issue; therefore, we decline to address the first issue presented for our review.

> Section 57-5-103 of the Tennessee Code states, in pertinent part:
> (a)(1) It is unlawful to operate any business engaged in the sale, distribution, manufacture, or storage of beer without a permit issued by the county or city where such business is located under the authority herein delegated to counties and cities.
> (2) Permits shall be issued to the owner of the business, whether a person, firm, corporation, joint-stock company, syndicate, or association.
> (3) A permit shall be valid:
> (A) Only for the owner to whom the permit is issued and cannot be transferred to another owner. If the owner is a corporation, a change in ownership shall occur when control of at least fifty percent (50%) of the stock of the corporation is transferred to new owner.

TENN. CODE ANN. § 57-5-103(a)(1)-(3)(A) (Supp. 2000).

In Mapco Petroleum, Inc. v. Milton Basden, et al., 774 S.W.2d 598 (Tenn. 1989), the Supreme Court of Tennessee stated that "a [beer] permit issued to one person might not be used lawfully by another despite the fact that the location remained the same." Id. at 599-600 (quoting McBride v. State, 259 S.W.2d 533, 534 (Tenn. 1953)).

In the case at bar, the parties agreed that Mr. Hardville withdrew from the Merry Go Round Club business shortly after obtaining the beer permit. The testimony at the hearing by L.Z. Johnson and Mr. Johnson, the deposition testimony of Mr. Connell, and the transcript of the July 15, 1999 Dyer County Beer Board meeting were controverted, however, as to whether Mr. Connell withdrew from the Merry Go Round Club business at the end of 1993. From our review of the record, taking into account the trial court's credibility determination, we find that Mr. Connell had withdrawn from the Merry Go Round Club business at the end of 1993. We agree with the trial court's finding that Mr. Johnson was the de facto owner of the Merry Go Round Club. Since the beer permit was issued in the names of Mr. Hardville and Mr. Connell, the beer permit was not transferable to Mr. Johnson once Mr. Hardville and Mr. Connell withdrew from the Merry Go Round Club business. A valid beer permit was not in effect for a continuous six month period after January 1, 1993 when Mr.

Johnson was the de facto owner of the Merry Go Round Club. Consequently, the grandfather clause to the Resolution is inapplicable to the case at bar, and Ms. Woods cannot obtain a beer permit because the Merry Go Round Club is located within 2,000 feet of a church. Accordingly, we affirm the trial court's decision affirming the decision of the Dyer County Beer Board and denying Ms. Woods' petition for writ of certiorari.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellant, Eva Woods, and her surety, for which execution may issue if necessary.


_____
ALAN E. HIGHERS, JUDGE