IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 5, 2024

IN RE AUSTYNN F.

FILED
JAN 07 2025
Clerk of the Appellate Courts
REc'd By _____

Appeal from the Chancery Court for Knox County
No. 202572-2 Richard B. Armstrong, Jr., Chancellor

_____

No. E2023-01707-COA-R3-PT

_____

A father appeals the termination of his parental rights to his child. The court found one ground for termination: abandonment by failure to visit. Because the trial court's order fails to resolve conflicting testimony concerning the father's visitation with the child, we vacate the judgment and remand for specific findings of fact and conclusions of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated;
Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, P.J., M.S., joined.

Andrew O. Beamer, Knoxville, Tennessee, for the appellant, Robert F.

H. Daniel Forrester, III, Clinton, Tennessee, for the appellees, Jacob S. and Savannah S.

Shelley S. Breeding, Knoxville, Tennessee, Guardian ad Litem.

**OPINION**

**I.**

**A.**

In June 2021, Savannah S. ("Mother") and her husband, Jacob S. ("Stepfather"), petitioned to terminate Robert F.'s ("Father") parental rights to his child, Austynn F. They also requested permission for Stepfather to adopt the child. Among other reasons for their petition, they alleged that Father, who was incarcerated, "ha[d] not seen the child since 2016 when the minor child was approximately six months old, other than token visitation."

At trial, the court heard testimony from Mother, Father, Stepfather, the child's maternal grandmother, and the child's paternal grandmother and grandfather. Mother testified that the child was born in March 2016. Mother and Father, who were unmarried, lived together for approximately six months afterwards. Then Mother and the child moved out.

Everyone agreed that Father spent less time with the child after Mother moved out of their home. From then on, he was never alone with the child and never cared for the child overnight. He did not see the child on holidays or the child's birthday. According to Mother, Father never provided for the child's care or basic needs after the separation.

Mother recalled Father spending time with her and the child on just two occasions in September 2018 for a couple of hours each. Father claimed that he saw the child more often, although he "d[id not] have exact dates on any of it." He estimated that he saw the child "probably once every three months" for a period of two to three hours each time. He included in this estimate times when he would stop by his mother's house to see the child while his mother was caring for her. And he included times when he ran into someone with the child "out in town" at places like a gas station or grocery store.

Father was incarcerated twice between the time Mother moved out and the trial. He was first incarcerated from May 2018 until September 2018 for "a misdemeanor probation violation." In October 2018, Father began serving an eight-year sentence for "conspiracy to distribute methamphetamine."

At the beginning of each of his incarcerations, Father had some contact with the child. He wrote letters to Mother and the child. He spoke with the child on the phone. And he estimated that Mother took the child to visit him in prison "at least" eight or ten times. But Mother testified that the child only received one letter from Father "in the last several years." And it had "been a few years" since the child spoke to Father on the phone. Father's mother had initially facilitated video chats between Father and the child "every time" the child was at her house, which had been about twice per week. But Mother took the child to see Father's mother less often as time passed. According to Mother, she allowed the child to have phone contact with Father, but the child did not want it. Mother felt that the child "ha[d] no relationship with him" and "barely remember[ed] him." The child "d[id not] ever talk about him."

B.

The court terminated Father's parental rights to the child based on abandonment. *See* Tenn. Code Ann. § 36-1-113(g)(1) (2021). For purposes of terminating parental rights, "abandonment" is defined in multiple ways. *See id.* § 36-1-102(1)(A) (2021). The court relied on a definition that applies when the parent who is the subject of the termination

2

petition is or was incarcerated at the filing of the petition or within the four-month period preceding the filing. *See id.* § 36-1-102(1)(A)(iv). Because Father had two separate periods of incarceration, the court considered whether he had "[f]ailed to visit . . . during an aggregation of the first one hundred twenty (120) days of non-incarceration immediately preceding the filing of the [petition to terminate]."[1] *Id.* § 36-1-102(1)(A)(iv)(b).

In its oral ruling, the trial court grappled with the conflicting testimony of Mother and Father on visitation. It seemingly credited Mother's testimony that Father had only visited with the child twice during the applicable 120-day period. But the court also referenced Father "run[ning] into" the child around town. Without indicating whether it accepted Father's testimony of visits beyond the two that Mother identified, the court found that the impromptu "visits" described by Father were "token at best." *See id.* § 36-1-102(1)(C) (defining "token visitation" as "visitation, under the circumstances of the individual case, constitut[ing] nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child"). The court did not characterize the two visits described by Mother as token.

When the court entered its written order, it concluded that Mother and Stepfather had "proved [by clear and convincing evidence] abandonment by failure to willfully visit by [Father] under Tenn. Code Ann. § 36-1-113." In support of its conclusion, the court made a single finding: Father "failed to exercise visitation with the minor child in the four (4) months preceding the filing of th[e] Petition, and excluding the dates of incarceration of [Father]." The bulk of the order dealt with the child's best interest. The court concluded that there was clear and convincing evidence that termination of Father's parental rights was in the best interests of the child. *See id.* § 36-1-113(c)(2).

## II.

### A.

A parent has a fundamental right, based in both the federal and state constitutions, to the care and custody their child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. The government's interest in the welfare of a child justifies interference with a parent's constitutional rights in certain circumstances. *See* Tenn. Code Ann. § 36-1-113(g).

---

[1] Days are aggregated "by counting the days preceding, following, and in-between each period of incarceration of at least seven (7) consecutive days." Tenn. Code Ann. § 36-1-102(1)(K).

Tennessee Code Annotated § 36-1-113 describes both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). First, parties seeking termination of parental rights must prove the existence of at least one statutory ground for termination. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); Tenn. Code Ann. § 36-1-113(c)(1). If they prove the existence of one or more statutory grounds, they then must prove that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d at 546). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *Id.* "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

We review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); TENN. R. APP. P. 13(d). We then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

B.

On appeal, Father faults the trial court's order because it "failed to make findings of fact and conclusions of law that supported the final decision."[2] In his view, the order "does not state with any specifics how the Court concluded that T.C.A. § 36-1-113 abandonment by failure to willfully visit was met or by which evidence this was found."

---

[2] Additionally, Father argues that "any burden shifting" within the termination of parental rights statute is unconstitutional under both the state and federal constitutions. *See* Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(I). Because Father did not present this argument to the trial court, we deem the issue waived. *See State v. Bristol*, 654 S.W.3d 917, 925 (Tenn. 2022) (explaining that "questions not raised in the trial court will not be entertained on appeal" (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983))).

4

The parental termination statute requires "an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k).[3] In this context, factual findings "facilitate appellate review" and safeguard the important rights at stake in a termination proceeding. *In re Angela E.*, 303 S.W.3d at 251 (quoting *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Our Court "routinely remand[s] contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests." *In re Angela E.*, 303 S.W.3d at 251.

Here, the order lacked sufficient findings of fact or conclusions of law. Although the proof established that Father was incarcerated on two separate occasions, the court did not identify the dates on which Father was not incarcerated before the filing of the petition to terminate parental rights. And it failed to make findings concerning the visits that did occur during the applicable 120-day period of "non-incarceration." *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv)(b). Mother's and Father's testimony on this point conflicted. This conflict should be resolved in the first instance by the trial court. *See Hudson v. Capps*, 651 S.W.2d 243, 246 (Tenn. Ct. App. 1983) (noting that "[a]ny conflict in testimony requiring a determination of the credibility of a witness or witnesses is for the trial court and binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary").

The court also failed to determine whether it found some or all of Father's visits with the child to be "token visitation." *See* Tenn. Code Ann. § 36-1-102(1)(C). Based on the finding that the court did make, we might assume that it deemed all of Father's visits to be token, no matter how many there may have been. *See id.* § 36-1-102(E) (defining "failed to visit" as "the failure . . . to visit or engage in more than token visitation"). But without knowing the frequency, duration, or quality of the visits that the court found to have occurred, review of whether the visitation was token "under the circumstances" here is impossible. *See id.* § 36-1-102(1)(C); *see also In re Keri C.*, 384 S.W.3d 731, 750 (Tenn. Ct. App. 2010) (recognizing the importance of the "frequency, duration, and quality of the visits" in determining whether visitation was only token).

Mother and Stepfather counter that the transcript of the court's oral ruling supplies the missing factual findings. The oral ruling, however, is not part of our review. The court's written order controls, and unless the oral ruling is incorporated into the written

---

[3] Rather than invoke the requirements for orders found in the parental termination statute, Father argues that the court's order did not comply with Tennessee Rule of Civil Procedure 52.01. Given that Rule 52.01 and Tennessee Code Annotated § 36-1-113(k) serve similar purposes and that decisions regarding the termination of parental rights require haste, we conclude that supplemental briefing to address the statute rather than the rule is unnecessary. *See Welch v. Oaktree Health & Rehab. Ctr. LLC*, 674 S.W.3d 881, 888 (Tenn. 2023) (holding that, "barring unusual circumstances," an appellate court "should normally . . . allow the parties to weigh in [on the applicable law]").

order, appellate review is limited to the written order. *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015); *In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016). The court did not incorporate its oral ruling in the final order granting termination of parental rights. Even had it done so, as noted above, the oral ruling does not fully address the frequency, duration, and quality of the visits that were made.

## III.

Because of a lack of specific findings of fact and conclusions of law, we vacate the judgment terminating Father's parental rights. The case is remanded for specific findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k) and such other proceedings as are necessary and consistent with this opinion.[4]

_____ s/ W. Neal McBrayer _____
W. NEAL McBRAYER, JUDGE

---

[4] Although Father challenged only the factual findings and legal conclusions relating to the statutory ground for terminating his parental rights, the trial court's analysis of the child's best interest in some instances only repeats the language of the best interest factors. *See* Tenn. Code Ann. § 36-1-113(i). The order includes very few subsidiary factual findings. *See Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (requiring findings of fact to "include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue" (quoting 9C CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2579, at 328 (3rd ed. 2005))). On remand, the trial court should also supplement the factual findings supporting its conclusion that termination of Father's parental rights is in the child's best interests.

6